| EX PARTE IN THE MATTER | * | IN THE |
|---|---|---|
| OF THE APPLICATION OF | * | CIRCUIT COURT |
| THE STATE OF MARYLAND | * | FOR |
| FOR AMENDED ORDERS | * | BALTIMORE CITY |
| AUTHORIZING THE INTERCEPTION | * | IN THE |
| OF WIRE AND ELECTRONIC | * | STATE OF MARYLAND |
| COMMUNICATIONS | * | |
| OVER TELEPHONE NUMBER | * | |
| 410-949-4832 | * | |
| IMSI# 310410352505492 | | |
| (A-Line) and | * | |
| FOR ORDERS AUTHORIZING | * | |
| THE INTERCEPTION OF | * | |
| WIRE COMMUNICATIONS | * | |
| OVER TELEPHONE NUMBER | * | |
| 443-992-8130 | * | |
| UFMI# 164*1012*3591 | | |
| IMSI# 316010159422589 | * | |
| (C-Line) | | |
| | * | |

      *    *    *    *    *    *    *    *    *    *    *

## **AFFIDAVIT**

William Spencer, Affiant, a Detective with the Baltimore Police Department (hereinafter "BPD"), Kenneth Ramberg, co-Affiant, a Detective with the BPD, Evans Celestin, co-Affiant, a Special Agent with the Drug Enforcement Administration (hereinafter "DEA") being duly sworn, depose and state:

1

EXHIBIT 1

USA-003367

## INTRODUCTION

1.      Affiant, Detective William Spencer, has been a duly sworn member of the Baltimore Police Department since December 1, 2003, and is an "investigative or law enforcement officer" within the meaning of section 10-401(6) of the Courts and Judicial Proceedings Article of the Maryland Code (herein after "Courts Article"), that is, a sworn law enforcement officer of the State or a political subdivision of the State, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 10 of the Courts Article.

2.      Affiant, Detective William Spencer, is currently assigned to BPD's Violent Crime Impact Section. Your Affiant has been previously assigned to Patrol, Northern District Drug Enforcement Section and the Organized Crime Division. Your Affiant's current assignment involves the investigation of violent offenders, drug organizations and undercover operations where your Affiant has face-to-face meetings with Controlled and Dangerous Substance (hereinafter "CDS") dealers looking to sell and purchase varying types of CDS.

3.      In addition to entry level training, (CDS training given by the U.S. Department of Justice, Drug Enforcement Administration (DEA,) your Affiant was assigned to the following positions within the Baltimore Police Department: Northern District Patrol Division, Northern District Drug unit, Organized Crime Division Narcotics Section, and as a Task Force Officer with the ATF Violent Crime Impact Team (VCIT) working in a plainclothes capacity.

4.      Your Affiant has received over 300 hours of specialized training through several schools hosted by the Baltimore Police Department, John E. Reid and

EXHIBIT 1                                              USA-003368

Associates, HIDTA and St. Petersburg College to include CDS enforcement; technical aspects of CDS enforcement, recognition, and identification, firearm enforcement; CDS packaging, surveillance, hidden compartments in houses and vehicles, gang trends and identification. Through these classes and seminars, your Affiant has obtained invaluable experience in the detection, identification, usage, and investigation of CDS and CDS organizations.

5.      Your Affiant has also received a bachelor's of science degree from the University of Baltimore for Forensic Studies with a concentration in Criminal Investigation. Completed coursework to obtain this degree included classes entitled; Specialty Warrants and Wiretaps, Fourth Amendment Applications and Interpretations, Conspiracy Investigations and Innovative Investigative Techniques. Through these classes, your Affiant has obtained valuable knowledge and experience related to complex criminal investigations.

6.      Your Affiant has participated in over 800 arrests that have resulted in the seizure of substantial amounts of heroin, cocaine, marijuana and other illegal substances. Your Affiant has authored over 100 search and seizure warrants that have led to seizures of large amounts of CDS, firearms, and U.S. Currency. Your Affiant has been a co-Affiant on one case that involved the intercept of secure communications (wiretaps).

7.      Your Affiant is familiar with the various methods used by individuals who buy and sell CDS.  Your Affiant is familiar with the jargon, terminology, prices, packaging and street slang used by individuals who distribute and purchase CDS. Your Affiant has observed and/or participated in actual sales and/or undercover purchases of

USA-003369

CDS. As a result of these observations and buys your Affiant has arrested persons involved and seized suspected CDS. Your Affiant has been accepted on numerous occasions as an expert witness in the field of CDS packaging, identification, and methods of street level CDS distribution, including street terminology and jargon, CDS traffickers, the structure of CDS Trafficking organizations, the methods of payment, and the manner in which CDS is transported. Your Affiant has been so accepted in said areas of expertise in the United States District Court for the District of Maryland, the Circuit Court for Baltimore City, the District Court of Maryland for Baltimore City and the Juvenile Division of the Circuit Court for Baltimore City.

8.      Co-Affiant, Detective Kenneth Ramberg, has been a duly sworn member of the Baltimore Police Department since October 6, 1994, and is an "investigative or law enforcement officer" within the meaning of section 10-401(6) of the Courts and Judicial Proceedings Article of the Maryland Code (herein after "Courts Article"), that is, a sworn law enforcement officer of the State or a political subdivision of the State, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 10 of the Courts Article.

9.      Co-Affiant, Detective Kenneth Ramberg, is currently assigned to Baltimore Police Department's Violent Crime Impact Section. Since your co-Affiant began his career as a Baltimore City police officer in 1994, he has been assigned to the following units: Central District Patrol Division, Central District FLEX Unit, Central District Drug unit, Organized Crime Division Narcotics Section, and Task Force Officer with the ATF HIDTA Project Disarm Unit. Currently your Co-Affiant is assigned to the Violent Crime Impact Section (VCIS) working in a plainclothes capacity.

4

EXHIBIT 1

USA-003370

10.     Your co-Affiant has received over 230 hours of specialized training through several schools hosted by the Baltimore Police Department, The Florida National Guard, HIDTA and St. Petersburg College to include CDS enforcement; technical aspects of CDS enforcement, recognition, and identification, firearm enforcement; CDS packaging, surveillance, hidden compartments in houses and vehicles, gang trends and identification.    Through these classes and seminars, Detective Ramberg has obtained invaluable experience in the detection, identification, usage, and investigation of CDS and CDS organizations.

11.     Your co-Affiant has participated in over 1000 arrests that have resulted in the seizure of substantial amounts of heroin, cocaine, marijuana and other illegal substances. Your co-Affiant has worked on several cases that involved the intercept of secure communications (wiretaps). Your co-Affiant has authored 15 wire tap (title III) investigations which resulted in the seizure of large amounts of CDS and firearms.  Your co-Affiant has authored over 100 search and seizure warrants that have led to seizures of large amounts of CDS, firearms, and U.S. Currency.

12.     Your co-Affiant is familiar with the language, terminology and street slang used by persons who purchase and distribute CDS.  Your co-Affiant is also familiar with the prices as well as the packaging and paraphernalia used to distribute and manufacture CDS.  Your co-Affiant has conducted numerous surveillances of suspected CDS transactions on the streets of Baltimore City.  During these observations, thousands of CDS transactions have been observed resulting in the arrest of CDS violators.  Your co-Affiant has also interviewed street-level, mid-level, and CDS distributors along with CDS users, which has provided insight into drug trafficking

USA-003371

patterns.

13.     Your co-Affiant has been accepted on numerous occasions as an expert witness in the field of CDS packaging, identification, and methods of street level CDS distribution, including street terminology and jargon, CDS traffickers, the structure of CDS Trafficking organizations, the methods of payment, and the manner in which CDS is transported.  Your co-Affiant has been so accepted in said areas of expertise in the United States District Court for the District of Maryland, the Circuit Court for Baltimore City, the District Court of Maryland for Baltimore City and the Juvenile Division of the Circuit Court for Baltimore City.

14.  Your co-Affiant, Evans Celestin, has been employed as a Special Agent with the Drug Enforcement Administration (hereinafter referred to as "DEA") since September 2007.  Your co-Affiant is currently assigned to the DEA of the Baltimore District Office Heroin Task Force.

15.  Your co-Affiant previously served as a federal police officer with the Uniformed Division of the United States Secret Service for over six (6) years.  During that time, your co-Affiant was primarily assigned to the White House branch, the Emergency Response Team, and the Special Operations Division.

16.  Your co-Affiant received twenty-six (26) weeks of training at the Federal Law Enforcement Training Center and United States Secret Service Basic School in Beltsville, Maryland.  Additionally, your co-Affiant received eight (8) weeks of training at the Emergency Response Basic School and twelve (12) weeks of training at the Tactical Canine School.  Your co-Affiant received nineteen (19) weeks of formalized training at the DEA Training Academy in Quantico, Virginia.  Your co-Affiant received instruction

EXHIBIT 1

USA-003372

on identifying CDS, packaging, pricing, importation methods, source cities, and trafficking methods of CDS violators. Additionally, your co-Affiant has received training in informant handling, debriefing of CDS violators, and training in the area of surveillance and counter surveillance.

17. Since becoming a Special Agent, your co-Affiant has participated in approximately 100 controlled purchases of heroin, MDMA, cocaine and crack cocaine using confidential informants. Your co-Affiant has participated in undercover operations. Your co-Affiant has participated in the execution of numerous search and seizure warrants pertaining to CDS. As a result, your co-Affiant was involved in the seizure of heroin, marijuana, crack cocaine, cocaine, and packaging materials. After the execution of these warrants, your co-Affiant participated in debriefing of individuals suspected of involvement in drug trafficking. During these debriefings, your co-Affiant became familiar with brand names and jargon used amongst CDS dealers. In addition, your co-Affiant has testified numerous times before the Grand Jury for the United States of America.

18. Your Affiants have learned from their training and experience that cell phones are an indispensable tool of the drug trafficking trade. CDS traffickers utilize cell phones to conduct all manner of CDS trafficking related activities, including but not limited to, contacting sources of supply to acquire new quantities of CDS, making and receiving calls from individuals that they supply with CDS, coordinating the distribution of CDS to organizational "shops" and arranging for the collection and laundering of CDS proceeds. Your Affiants have learned from their training and experience that CDS traffickers also utilize cell phones to communicate with sources of supply, shop workers

EXHIBIT 1

USA-003373

and CDS purchasers through text messaging. Your Affiants have learned from their training and experience that the stored electronic communications in cell phones utilized by CDS traffickers contains the incoming and outgoing phone numbers of sources of supply, shop workers and CDS purchasers as well as text messages sent and received by the CDS trafficker's cell phone.

19. Your Affiants submit this affidavit in support of an application for an amended order pursuant to section 10-408 of the Courts and Judicial Proceedings Article of the Maryland Code, authorizing the interception and recording of wire and electronic communications occurring over:

> the cellular telephone assigned number **410-949-4832** (CELLPHONE **410-949-4832**) bearing **IMSI# 310410352505492 (A-Line)**, subscribed/billed to Delores Johnson, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ service provided by AT&T Wireless; believed to be utilized by **Michael Johnson (AKA "Phil")** and

an order pursuant to section 10-408 of the Courts and Judicial Proceedings Article of the Maryland Code, authorizing the interception and recording of wire communications occurring over:

> the cellular telephone assigned number **443-992-8130** (CELLPHONE**443-992-8130**) bearing **UFMI# 164*1012*3591** and **IMSI# 316010159422589** subscribed/billed to Mike Jones, ▮▮▮▮▮▮▮▮▮▮service provided by Sprint/Nextel; believed to be utilized by **Dana Bowman (AKA "New York Mike")**

concerning offenses enumerated in section 10-406 of the Courts and Judicial Proceedings Article of the Maryland Code, that is, offenses involving the distribution, possession with intent to distribute, conspiracy to distribute and conspiracy to possess with intent to distribute controlled dangerous substances in violation of Title 5 of the Criminal Law Article of the Maryland Code and the common law of Maryland.

EXHIBIT 1

USA-003374

20. Your Affiants respectfully submit that there is probable cause to believe that these offenses have been committed, are being committed, and will continue to be committed by persons who are the subjects of this investigation, including, among others:

**DANA BOWMAN (AKA "New York Mike" or "Hood")**
**DONALD WRIGHT (AKA "AZ" or "A")**
**SHAWN JOHNSON (AKA "S" or "Fatboy")**
**JEFF GIBBS (AKA "Jeff")**
**KEVIN JACKSON (AKA "KD")**
**WILLIAM HITE (AKA "Tony")**
**MICHAEL JOHNSON (AKA "Phil")**
**DAVID PARKER (AKA "Chief Busy Bee")**
**and others as of yet unidentified (collectively, the "TARGET SUBJECTS").**

21. The requested Orders are sought for a period of time until the requested interceptions fully reveal the identity of and manner in which the **TARGET SUBJECTS** engage in the above described offenses, or for a period of thirty (30) days, whichever occurs first, pursuant to section 10-408(e)(1) of the Courts Article. Pursuant to section 10-408(e)(1) of the Courts Article, it is requested that the 30-day period be measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Court's Order or ten (10) days from the date of this Court's Order.

22. This investigation is currently being conducted by Baltimore Police Department (BPD) and Drug Enforcement Administration (DEA). Your Affiants have personally participated in this investigation and make this affidavit based on their personal participation in this investigation, reports made to your Affiants by other law enforcement agents, telephone records, a review of consensually-recorded conversations, a review of evidence seized and documents obtained during this

9

EXHIBIT 1

USA-003375

investigation, and debriefings of confidential informants. Except where otherwise noted, the information set forth in this affidavit has been provided to your Affiants by other law enforcement agents who have assisted in the investigation. Unless otherwise noted, wherever your Affiants assert that a statement was made, the statement was made by another law enforcement officer (any of whom may have had either direct or hearsay knowledge of that statement) to whom your Affiants or other law enforcement officers have spoken or whose reports your Affiants have read and reviewed. Such statements are reported in substance and in part, unless otherwise indicated. Likewise, information resulting from surveillance sets forth either your Affiants' personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

23.     As more fully described the previous affidavit, which has been *incorporated by reference*, in developing the evidence needed to successfully prosecute the above described **TARGET SUBJECTS** beyond a reasonable doubt, normal investigative procedures have been tried and failed, reasonably appear to be unlikely to succeed if tried or are too dangerous to attempt.

24.     This affidavit is being submitted for the limited purpose of securing an amended order authorizing the interception of wire and electronic communications for **410-949-4832/IMSI# 310410352505492(A-Line)** and an order authorizing the interception of wire communications for **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)**. Your Affiants have not included details of every aspect of this investigation to date. Facts not set forth herein are not being relied on in reaching the conclusion that orders should be issued. Nor do your Affiants request that this

USA-003376

Court rely on any facts not set forth herein in reviewing this application for an order authorizing the interception of wire and electronic communications.

## TARGET OFFENSES

25.    Based upon your Affiants' knowledge of the facts and circumstances of the present investigation, it is alleged that there is probable cause to believe that the **TARGET SUBJECTS** and others as yet unknown, have committed, are committing, and will continue to commit offenses involving distribution, possession with intent to distribute, conspiracy to distribute and conspiracy to possess with intent to distribute controlled dangerous substances in violation of Title 5 of the Criminal Law Article of the Maryland Code and the common law of Maryland, hereinafter referred to as "**TARGET OFFENSES.**"

## THE TARGETED CELLULAR TELEPHONE

26.    There is probable cause to believe that some of the **TARGET SUBJECTS** of this investigation, and others as yet unidentified, are using and will continue to use, during the period of interception applied for herein, CELLPHONE **410-949-4832/ IMSI# 310410352505492    (A-Line)    and    CELLPHONE    443-992-8130    UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** to facilitate, accomplish, and commit the above-described offenses.

27.    There is probable cause to believe that these communications will reveal: (i) the nature, extent and methods of operation of the CDS trafficking activities of the **TARGET SUBJECTS** and others as yet unknown or unidentified; (ii) the identities of the **TARGET SUBJECTS**, their accomplices, aiders and abettors, co-conspirators and participants in their illegal activities, including the sources of supply of the controlled

EXHIBIT 1                                          USA-003377

dangerous substances, as well as the distributors and purchasers of such controlled dangerous substances; (iii) the quantities and types of controlled dangerous substances involved in this conspiracy; (iv) the degree of participation and roles of all co-conspirators in this conspiracy; (v) the addresses and telephone numbers of all participants, so that the location of any criminal activity related to or resulting from this conspiracy to distribute controlled dangerous substances can be determined; (vi) all details about the manner of shipment or movement of controlled dangerous substances; (vii) methods of eluding law enforcement detection; (viii) the nature and scope of the drug activity; (ix) the locations of contraband and of items used in furtherance of those activities, including the location of all "stash" houses at which these controlled dangerous substances are stored; (x) the location and source of resources used to finance this illegal activity, and the location, movement and disposition of proceeds from this illicit drug activity; (xi) the times, dates, and locations of meetings at which persons involved in this conspiracy pick up CDS, exchange money, and meet to discuss the progress of the drug trafficking operation; (xii) the existence and locations of records of the drug trafficking operation; (xiii) the identification of communication devices or telephone instruments used by the **TARGET SUBJECTS** and others yet unknown, to further their illegal activities; and (xiv) other evidence necessary for the successful prosecution of the above-described participants and others as yet unknown. The acquisition of evidence relating to subparagraphs (i) – (xiv), sufficient to support guilt beyond a reasonable doubt, constitute the goals of this investigation. In addition, interception of these wire and electronic communications are expected to constitute admissible evidence of the commission of the offenses described above.

EXHIBIT 1

USA-003378

28.     Your Affiants have been informed by other law enforcement personnel who are familiar with the applicable telephone technology that a "portable cellular telephone" (or a "mobile telephone") can be used both within a vehicle and outside a vehicle through the use of a portable battery pack.   The cellular telephone system divides the Baltimore metropolitan area into many small coverage areas, which are called "cells."   As a vehicle in which a portable cellular telephone is located, or the cellular telephone itself, is moved from one cell to another, transmitters within each cell and a master switching network permit "wire communications" to be completed.   The service provider for the CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line),** AT&T Wireless and the service provider for the CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)**, Sprint/Nextel, are a Communications Common Carrier (hereinafter CCC) as defined by 10-401(a) of the Courts Article, to wit a "Communications Common Carrier" means any person engaged as a common carrier for hire in the transmission of wire or electronic communications. It is requested that the authorization apply not only to the target telephone number listed above, but also to any other telephone numbers used by or assigned to the same IMSI/ESN as CELLPHONE **410-949-4832/ IMSI# 310410352505492(A-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** or to any other changed IMSI/ESN assigned to the same telephone number as CELLPHONE **410-949-4832/ IMSI# 310410352505492(A-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** during the same 30-day period.

29.     In connection with the CCC which provides service for CELLPHONE **410-**

EXHIBIT 1

USA-003379

949-4832/ IMSI# 310410352505492 (A-Line) and 443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line) all communications over those cellular phones will automatically be routed to Baltimore, Maryland, where interception will occur regardless of where the telephone calls are placed to or from CELLPHONE 410-949-4832/ IMSI# 310410352505492 (A-Line) and CELLPHONE 443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line) during the requested wire surveillance, all monitoring will be performed in Baltimore, Maryland, by investigative or law enforcement officers as defined by Section 10-401 (6) of the Courts Article of the Maryland Code, including but not limited to Special Agents of DEA, police officers of the Baltimore Police Department, and government employees or individuals operating under a contract with the Government, who will be acting under the supervision of investigative or law enforcement officers authorized to conduct the interception.

30. Authorization is requested pursuant to section 10-408(c)(3) of the Courts Article for an amended order authorizing the interception of wire and electronic communications with regard to CELLPHONE 410-949-4832/ IMSI# 310410352505492 (A-Line) and an order authorizing the interception of wire communications with regard to 443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line) received or sent by a communication device anywhere within the State so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of this Honorable Court. In addition, it is requested that background conversations in the vicinity of CELLPHONE 410-949-4832/ IMSI# 310410352505492 (A-Line) and 443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line) while it is otherwise in use, also be intercepted. Your

EXHIBIT 1

USA-003380

Affiants aver that the offenses being investigated may transpire in the jurisdiction of this Honorable Court.

## PRIOR APPLICATIONS

31.    Your Affiants have been informed that as recently as September 29, 2010, the wire and electronic surveillance files maintained by the Federal Bureau of Investigation, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and Immigration and Customs Enforcement (ICE) have been reviewed. This inquiry was conducted by contacting DEA and the Baltimore/Washington HIDTA Watch Center.  Based on these reviews, there have been no prior applications for court authorized interceptions of wire, oral or electronic communications of the **TARGET SUBJECTS** or over CELLPHONE **410-949-4832/ IMSI# 310410352505492(A-Line)** and/or CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** with the exception of: The Honorable John Addison Howard, Associate Judge of the Circuit Court for Baltimore City, signed the following orders authorizing the installation and use of a Pen Register/Trap and Trace Device for cellular telephone: **410-949-4832 (A-Line)** on August 19, 2010, for **443-224-4565 (B-Line)** on September 24, 2010 and for **443-992-8130 (C-Line)** on August 19, 2010 . On September 30, 2010 Judge John Addison Howard signed orders authorizing the interception of communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line)** and **443-224-4565 (B-Line)**. Subsequent to the signing, AT&T Wireless notified your Affiants that the IMSI number for **A-Line** had been changed on August 29, 2010 to 310410352505492 from 310410187148454.

EXHIBIT 1

USA-003381

32.     Your Affiants hereby **incorporate by reference** the Affidavit filed in support of the Application for an Order authorizing the interception of wire communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line)** and CELLPHONE **443-224-4565/DC#: 164*1015*1724/IMSI# 316010166550249 (B-Line)**.

### PROBABLE CAUSE IN SUPPORT OF THE BELIEF THAT THE TARGET SUBJECTS, AND OTHERS AS YET UNIDENTIFIED, ARE USING CELLPHONE 410-949-4832/IMSI# 310410352505492 (A-Line) <u>IN FURTHERANCE OF THE TARGET OFFENSES</u>

### <u>CONTROLLED CALLS AND CDS PURCHASE</u>

33.     On September 23, 2010, while acting at the prior direction and under the supervision of your Affiant, CI #2 placed a controlled call to CELLPHONE **410-949-4832, IMSI# 310410352505492 (A-Line)**, utilized by **Michael Johnson, aka "Phil"**, at for the purpose of arranging a purchase of heroin. This call was recorded with a digital recorder and is as follows:

| | |
|---|---|
| Johnson: | Yo. |
| CI#2: | Hey, Phil? |
| Johnson: | Yeah. |
| CI#2: two- | Yeah, this ----- again. Let me ask you this. Can you do it, can you do it for twenty? |
| Johnson: | Ah, man. |
| CI#2: | I mean, if not Phil, then okay. If not, don't worry about it. |
| Johnson: | Yeah. Uh, yeah. |
| CI#2: | Okay, where you want me to meet you at? |
| Johnson: | You ready now? |

EXHIBIT 1

USA-003382

CI#2:      Yeah, I'm ready now.

Johnson:   Alright, uh, you gonna have your phone with you?

CI#2:      Yeah, I got my phone with me.

Johnson:   Alright, meet me at uh, meet me on uh, uh, uh, uh, Kenwood and
Hoffman.

CI#2:      Kenwood and Hoffman?

Johnson:   Yeah.

CI#2:      Alright. How long, Phil?

Johnson:   Just call me when, no, just call me when you get right there.

CI#2:      Okay, alright. Okay.

Johnson:   Alright.

34.    Once the call was completed, your Affiant searched CI #2 and found
him/her to be free of any CDS. Your Affiant then provided CI #2 with an amount of
departmental currency to purchase heroin from Johnson. Your Affiant then established
surveillance at the pre-determined meeting spot. At that time, your Affiant observed
**Michael Johnson, aka "Phil"**, approach CI #2 and engage him/her in conversation.
CI#2 then handed Johnson an amount of departmental currency. Johnson was then
observed handing CI #2 unknown small object(s) consistent in size and shape with
suspected CDS. CI #2 then left the area and headed directly to my location. CI #2 then
handed your Affiant an amount of suspected heroin, purchased from **Michael Johnson,
aka "Phil".** The suspected heroin was submitted to the Baltimore Police Evidence
Control Unit under CC#101I10527. The contents of the gelatin capsules tested positive
for heroin, a schedule I controlled dangerous substance. See State's exhibit 15,
attached and incorporated by reference herein.

EXHIBIT 1                                          USA-003383

## TELEPHONE TOLL RECORDS - SMS

35.    On August 19, 2010, Judge John Addison Howard of the Circuit Court for Baltimore City signed an order authorizing the installation and use of a pen register/trap and trace device for CELLPHONE **410-949-4832, IMSI# 310410352505492 (A-Line)**, an AT&T wireless cellular telephone. From the time period of October 1, 2010 through October 4, 2010 there were 176 SMS (text message) activations.

36.    Your Affiants know from their training, knowledge and experience in CDS trafficking investigations that CDS traffickers use text messages to communicate with their criminal associates to further their illicit business activities. In addition, CDS traffickers believe that the ability to erase the text messages prevents the acquisition of same by law enforcement. The quantity of text messaging being used by **Michael Johnson (AKA "Phil")** over **410-949-4832, IMSI# 310410352505492 (A-Line)** indicates an extremely high volume of text messages based on the average user. His participation in CDS trafficking suggests that these text messages may be in furtherance of the **TARGET OFFENSES**.

### PROBABLE CAUSE IN SUPPORT OF THE BELIEF THAT THE TARGET SUBJECTS, AND OTHERS AS YET UNIDENTIFIED, ARE USING CELLPHONE 443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line) IN FURTHERANCE OF THE TARGET OFFENSES

37.    On October 1, 2010 at 6:14 p.m., (1814 hours), direct connect call **B- # 10** was intercepted as an incoming call from **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** (utilized by Dana Bowman AKA "New York Mike"). The subscriber for this phone is Mike Jones. The following is an excerpt from the call:

Jackson:    God Damn yo nigga been calling you! Good god almighty!

EXHIBIT 1

USA-003384

Bowman:     Yeah…… Phone off… you know the phone off ain't nothing cracking.

Jackson:    I see (laughing)… Nigga try to play with me and all that… nigga called Me a fake ass grass nigga, you heard me?

Bowman:     Yo, I'm a hit you right back, hold on… (inaudible)

Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that Jackson has been calling him due to he is trying to get a supply of CDS and that he has been calling him all day long (God Damn yo nigga been calling you! Good god almighty). Bowman is telling Jackson that if he is not out on the streets then there are no drugs being sold (you know the phone off ain't nothing cracking) Kevin Jackson is telling Bowman that people are saying that he is trying to be a major drug dealer but all he knows how to do is sell Marijuana (Nigga try to play with me and all that… Nigga called me a fake ass grass Nigga)

38.     On October 2, 2010 at 12:32 PM (1232 Hrs), direct connect call **B- # 29** was intercepted as an Incoming call from **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** (utilized by Dana Bowman AKA "New York Mike"). The subscriber for this phone is Mike Jones at this time. The following is an excerpt from the call:

Bowmen:     Yo, she in there.

Jackson:     Nah, I'm on my way back up.

Bowmen:     Oh Aight.

Jackson:     I'm gonna be on "L" yo.

Bowmen:     Yo you want these couple of joints though?

Jackson:     Yup…

39.     Your Affiants believe based on their training, knowledge and experience

EXHIBIT 1

USA-003385

that Kevin Jackson is telling Bowman that he is on Luzerne Street when he states that he is on "L". When Bowman asks Kevin Jackson if he wants a couple joints Bowman is using street terminology used to describe items of CDS.

40. Your Affiants believe, based upon their training, knowledge and experience in CDS trafficking investigations, that Bowman is telling Jackson that the female is at the drug stash house. Bowman then asks Jackson if he needs a new supply of CDS.

41. On October 2, 2010 at 12:34 PM (1235 Hrs), phone call **B- # 135** as intercepted as an outgoing call to telephone # 443-452-2580 (utilized by an unknown male). The subscriber for this phone is unknown at this time. The following is an excerpt from the call:

Jackson: Hey yo, um, when you talk to Eyes, tell Eyes I'm good, you hear me?

Unknown Male: Alright, I got you.

Jackson: Alright.

Unknown Male: Hey yo.

Jackson: Yeah.

Unknown Male: You outside?

Jackson: Yeah.

Unknown Male: Is Money out that bitch?

Jackson: I didn't even, I just came out for real, for real. I just now went and got right. So I am about to see if its straight out there for real. I see…(inaudible).

Unknown Male: Is anybody outside?

Jackson: Phil and them out there, well not….

USA-003386

| | |
|---|---|
| Unknown Male: | Who? |
| Jackson: | Phil and them out there. |
| Unknown Male: | Oh, alright. |
| Jackson: | So there must be a couple of dollars out there. They the only ones I see out. |

42.     Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that Kevin Jackson is telling the unknown male that he has a supply of CDS and to let people know (when you talk to Eyes, tell Eyes I'm good, you hear me). Jackson tells the unknown male that he had just met with his CDS supplier (Dana Bowman refer to call # B-29) and that he had just received a new supply of CDS to be sold (I didn't even, I just came out for real, for real. I just now went and got right. So I am about to see if it's straight out there for real). The unknown male asks Jackson if there are any other individuals selling CDS out on the streets (Is anybody out there), Jackson states that Phil (Believed to be Michael Johnson **410-949-4832/ IMSI# 310410352505492 (A-Line)**. Jackson then states that Michael Johnson is making money from CDS sales (So there must be a couple of dollars out there. They the only ones I see out).

43.     Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that Bowman had just met with Jackson and given a new supply of CDS to Jackson which is to be sold on the streets of Baltimore City.

44.     On October 2, 2010 at 4:56 p.m. (1656 Hrs), direct connect call **B- # 37** was intercepted as an incoming call from **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** (utilized by Dana Bowman AKA "New York Mike"). The subscriber for this phone is unknown at this time. The following is an excerpt from the

EXHIBIT 1                    USA-003387

call:

Bowman:     Yo

Jackson:    Baby you around?

Bowman:     What?

Jackson:    The joint yo.

Bowman:     Inaudible… I went to go see somebody for a minute… be there about, five
            minute… Yo I'm a ask Yo to come get it, give it to you yo.

Jackson:    Nah don't worry about it, I'll wait for you

45.    Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that Kevin Jackson is asking Dana Bowman if he has a supply of CDS (Baby you around, the joint yo). Bowman tells Jackson that he is in the middle of a CDS sale and that he will have to send another person to give him the new supply of CDS (I went to go see somebody for a minute, be there about, five minute, Yo I'm a ask Yo to come get it, give it to you yo).

46.    On October 2, 2010 at 5:26 PM (1726 Hrs), direct connect call **B- # 43** was intercepted as an incoming call from **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** (utilized by Dana Bowman AKA "New York Mike"). The subscriber for this phone is unknown at this time. The following is an excerpt from the call:

Jackson:    Yo, you hit me?

Bowman:     Yeah I was hitting you cause I was right there, I was asking you if
            Like yo still want it.

Jackson:    Nah, Yo had dipped.

47. Your Affiants believe based on their training, knowledge and experience in CDS trafficking investigations, that Dana Bowman was asking Kevin Jackson if the person that wanted to purchase CDS still wanted to buy it (Yeah I was hitting you cause I was right there, I was asking you if Like yo still want it) Jackson tells Bowman that the buyer had left (nah Yo had dipped).

48. Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, it is believed that Dana Bowman is telling Kevin Jackson that he has the CDS that was ordered and that he is near by, and wanted to know if the person that wanted it was still in the area.

49. From the aforementioned calls, your Affiants believe that Dana Bowman is supplying Kevin Jackson with large amounts of CDS, utilizing the cellular phone number of **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** in furtherance of same. Dana Bowman along with the assistance of Kevin Jackson is arranging additional CDS sales with other unknown individuals in and around the area of Baltimore City.

## TELEPHONE TOLL RECORDS

50. On August 19, 2010, Judge John Addison Howard of the Circuit Court for Baltimore City signed an order authorizing the installation and use of a pen register/trap and trace device for CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line)**, a Sprint/Nextel cellular telephone.

51. Your Affiants have also learned through toll analysis of CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)**, utilized by Dana Bowman, that during the period of September 28, 2010 through October 5, 2010, there

EXHIBIT 1

USA-003389

were eighty-seven (87) contacts between Bowman's phone and CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line).** Your Affiants know through their training, knowledge, and experience in CDS trafficking investigations, that it is a common practice for individuals that manage a large-scale street-level CDS distribution network to contact each other throughout the day with cell phones. This is important because individuals managing CDS operations need constant updates on their current supply, availability of stash locations, and any potential problems that may arise. There is no known familial association or other relationship status between these two people that would warrant conversations two or more times a day, every day. This frequency of contact is highly indicative that the target cell phones are being used to further the conspiracy to distribute CDS.

### PROBABLE CAUSE EXISTS THAT PARTICULAR COMMUNICATIONS CONCERNING THE TARGET OFFENSES WILL BE OBTAINED THROUGH INTERCEPTION OF WIRE AND/OR ELECTRONIC COMMUNICATIONS OVER THE TARGET CELLPHONES

52.     Your Affiants have learned from their training, knowledge and experience in CDS enforcement that CDS trafficking is not an isolated or discrete criminal offense; rather, it is characterized by an ongoing and recurring criminal nature. CDS trafficking is an illicit commercial enterprise. The facts and circumstances set forth in this affidavit establish **Dana Bowman** and other **TARGET SUBJECTS** are actively engaged in an ongoing conspiracy to traffic in CDS in Baltimore City. Your Affiants have also learned from their training, knowledge and experience in CDS enforcement that cellular telephones are an indispensable tool of the CDS trafficking trade. Cellular telephones are utilized by CDS traffickers to facilitate all aspects of the CDS trafficking trade. This

EXHIBIT 1

USA-003390

reliance by CDS traffickers on furthering their illicit trade via cellphone communication is reflected in this investigation both by the forementioned controlled purchases, all of which were arranged though cellular communications between CI #2 and **TARGET SUBJECTS**, as well as the DNR toll record analysis.

53.     The facts and circumstances set forth in this affidavit demonstrate that **Michael Johnson, (AKA "Phil")**, has used, is using and will continue to utilize CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line)** in furtherance of the **TARGET OFFENSES**. The facts and circumstances set forth in this affidavit demonstrate that **Dana Bowman, (AKA "New York Mike")**, has used, is using and will continue to utilize CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** in furtherance of the **TARGET OFFENSES**. Your Affiants believe, based on the totality of the information developed in this investigation, that probable cause exists and that particular communications concerning the offenses under investigation will be obtained through the interception of wire and electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line)** and the interception of wire communications over CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)**.

### NECESSITY FOR INTERCEPTION OF COMMUNICATIONS
### OVER THE TARGETED CELLPHONES

**NORMAL INVESTIGATIVE PROCEDURES HAVE BEEN TRIED
AND FAILED OR THEY REASONABLY APPEAR TO BE UNLIKELY
TO SUCCEED IF TRIED OR ARE TOO DANGEROUS TO ATTEMPT**

54.     On September 30, 2010, this Honorable Court signed orders, finding, inter alia, that evidence derived from electronic surveillance was necessary for the attainment

EXHIBIT 1                                              USA-003391

of all of the goals of this investigation as normal investigative procedures have been tried and failed, or such procedures reasonably appear to be unlikely to succeed in the future or are too dangerous to attempt. Your Affiants aver that during the ensuing 6 days since the execution of said orders, that all of the facts and circumstances presented in the initial affidavit filed in support of an application for an order authorizing the interception of wire communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line)** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** currently obtain and there have been no material changes or developments in routine or normal investigative procedures that would permit attainment of all of the goals of this investigation in the absence of court-ordered wire and electronic surveillance over CELLPHONE **410-949-4832/ IMSI# 310410352505492 (A-Line)** and court-ordered wire surveillance over CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)**.

55.    As outlined above, the goals and objectives of this investigation are to develop evidence sufficient to identify, locate, arrest and convict beyond a reasonable doubt, the criminal confederates of the CDS trafficking organization in which DANA BOWMAN and the other **TARGET SUBJECTS** are involved.    In addition, it is the purpose of this investigation to identify the organization's suppliers and the means by which the organization obtains and receives CDS, and to determine where the organization stores CDS and how it processes and launders CDS proceeds.  It is only through the interception of wire communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130**

EXHIBIT 1

USA-003392

**UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that the investigating agents expect to fully identify the targets that have been partially identified thus far and to fully realize the objectives of this investigation. As indicated below, several conventional investigative techniques have been so far tried, reasonably appear likely to fail if tried, or are likely to be too dangerous to employ to achieve all of the goals and objectives of this investigation.

### USE OF CONFIDENTIAL INFORMANTS

56.     This affidavit is based partially on informant information that was obtained pursuant to informant debriefings. Informant information has produced limited success in achieving the goals of this investigation. While several informants have been utilized by your Affiants in this investigation and much information and evidence has been uncovered, the resulting information has failed to reveal the sources of supply, methods of distribution, locations of all stash houses, the manner of concealment and laundering of CDS proceeds and the full scope of the CDS organization involving DANA BOWMAN and the other TARGET SUBJECTS.

57.     All of the confidential informants have indicated that they would be reluctant to testify, based on serious concerns for their own safety. The confidential informants are familiar with some, but not all, of the **TARGET SUBJECTS** and lack the ability to enter the level of criminal activity that would provide the nature of information to prosecute DANA BOWMAN and the other TARGET SUBJECTS and others as of yet unknown. All confidential informants are cooperating for financial gain and are not currently facing any pending criminal prosecution. The confidential informants would be subject to impeachment based upon their expectation of deriving personal benefit from

USA-003393

said testimony.

58.     For the above reasons, the use of confidential informants, alone or in combination with other conventional investigative techniques, has been tried and failed to achieve all of the goals and objectives of the investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

## UNDERCOVER OFFICERS

59.     None of the confidential informants are in a position in relation to DANA BOWMAN and the other **TARGET SUBJECTS** that would allow for the introduction of an undercover officer/agent.  According to the confidential informants DANA BOWMAN and the other TARGET SUBJECTS would balk at meeting any person who is not previously known to them or from the areas of east Baltimore in which they frequent.  In your Affiants' experience, CDS traffickers refuse dealing with potential customers without the benefit of an introduction from a trusted customer and, therefore, the confidential informants' inability in this regard prevents further pursuing this investigative technique.  Even if the confidential informants were able to successfully introduce an undercover officer/agent for future purchases, it is your Affiants' opinion that this would not further all of the goals of the investigation.  A mere purchase of CDS by an undercover officer would not give more information as to the structure of DANA BOWMAN'S ORGANIZATION or the manner in which they import and distribute CDS.

USA-003394

It would simply serve to verify the information that the confidential informants have already been able to impart on investigators. Additionally, from reviewing the criminal histories of DANA BOWMAN and the other TARGET SUBJECTS and their associates, your Affiants are aware of the amount of violence connected with this group. Consequently, your Affiants believe that it is too dangerous to utilize an undercover investigator to the level necessary to meet the goals of the investigation. Also, undercover detectives are often limited in buying CDS from dealers due to departmental and agency budgets. These limitations and actions could prove fatal to the investigation and could jeopardize the safety of the undercover officer. For those reasons, the use of an undercover officer, either alone or in combination with other conventional investigative techniques, is not here practicable or reasonably appears likely to fail if tried and is likely to be too dangerous to employ to achieve all of the goals and objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

## ASSOCIATE COOPERATION

60.     At this stage of the investigation, interviews with the known suspects and their associates concerning the above described violations would most assuredly compromise the investigation and cause the destruction or removal of evidence. In the past, members of the Bowman Organization who have been approached or arrested by

29

EXHIBIT 1

USA-003395

law enforcement have been very uncooperative or even hostile. Your Affiants believe members refuse to cooperate out of fear of retaliation from other members or due to the amount of loyalty within the organization. Your Affiants also believe that if investigators attempted to interview any of the **TARGET SUBJECTS** or their associates they would alert other members of possible infiltration by law enforcement. This would make it dangerous and virtually impossible to obtain evidence needed to further the goals of this investigation through this or any other investigative technique.

61.    For those reasons, obtaining the cooperation of additional associates, either alone or in combination with other conventional investigative techniques, is not practicable and reasonably appears likely to fail if tried and is likely to be too dangerous to employ to achieve the full objectives of this investigation. It is only through the interception of CDS related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

## SEARCH WARRANTS

62.    While search and seizure warrants have been helpful in the investigation and prosecution of the crimes being investigated, execution of additional search warrants at this stage of the investigation would frustrate as opposed to advance the attainment of the goals of this investigation. The search warrants that have been executed thus far have provided little evidence to help identify other members of the organization, where stash houses are located, the vehicles used in furtherance of CDS

trafficking, the locations of weapons and where bank accounts and other assets of the organization may be located. Additionally, your Affiants believe that the scope of conspiracy has not yet been fully defined and that execution of multiple search and seizure warrants at this time would alert the **TARGET SUBJECTS** and other unknown members of the conspiracy that they are currently under investigation. Within the past year, search warrants have been executed in various target locations of the investigation with little or no result in terms of CDS recovered or targets arrested. None of the search warrants executed have furthered the investigation in terms of gaining knowledge as to the conspiracy; they have at the most, taken out of play one of numerous stash houses used by the **TARGET SUBJECTS**. In addition, comments have been made by Bowman regarding the fact that police "can't find anything" and are frustrated, showing that he is aware of the fact that police are targeting him. Any further search warrants will simply continue to frustrate the investigation rather than adding intelligence regarding the conspiracy. Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that the execution of multiple search warrants at this stage of the investigation would, at most, result in a temporary disruption or suspension of criminal operations by the Bowman organization, or at least result in the alteration of the methods of operation of the organization, such as disposing of cell phones currently used in furtherance of conspiratorial activities. The "dropping" of the cell phones used by the **TARGET SUBJECTS** would result in a severe setback to the progress of this investigation. The overarching goal of this investigation is to *dismantle*, not disrupt, the Bowman CDS trafficking organization.

63.     For these reasons, additional search warrants, either alone or in

combination with other conventional investigative techniques is not practicable, or reasonably appears to be unlikely to succeed if tried to achieve the full goals and objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

### PHYSICAL SURVEILLANCE

64.     Surveillance is both dangerous and difficult in the area of east Baltimore where the Bowman Organization is currently engaged in CDS trafficking. This poses a potential risk to the investigators, the integrity of the investigation and innocent bystanders. As indicated above, your Affiants believe that members of the organization are counter-surveillance savvy and, consequently, are very difficult targets to conduct successful surveillance. Your Affiants believe that any attempt to conduct surveillance on the Bowman Organization or their associates would jeopardize the investigation and cause the subjects to change their pattern of activity and possibly "drop" their cell phones. As previously discussed, prior attempts have been made to conduct surveillance on the **TARGET SUBJECTS** and their associates. While this surveillance did provide some useful information, it also demonstrated that the **TARGET SUBJECTS** are very surveillance-conscious. They routinely cease their activities for fear that they were being watched. Therefore, your Affiants believe that any continued attempts to conduct surveillance of this organization would frustrate the progress law enforcement has made in dismantling the criminal enterprise in Baltimore City. For those reasons,

USA-003398

additional surveillance, either alone or in combination with other conventional investigative techniques, is not here practicable, would reasonably appear likely to fail if tried and is likely to be too dangerous to employ to achieve the full objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

### TRACKING DEVICES

65.    The past experiences of your investigators in dealing with this organization have shown that DANA BOWMAN and the other TARGET SUBJECTS and their associates are extremely aware of law enforcement's efforts to discover their illegal activity. As a result, your Affiants believe that the risk involved in placing a bumper beeper or a Global Positioning System (GPS) device on any vehicles connected to DANA BOWMAN and the other TARGET SUBJECTS or their associates would strongly outweigh any evidentiary value. Through the course of this investigation your Affiants have found that the **TARGET SUBJECTS** and their associates are known to utilize multiple vehicles in the course of their illegal activities. It is also known that DANA BOWMAN has access to multiple vehicles and has been known to change vehicles on a regular basis. Because these vehicles are registered to other individuals, it is possible for another driver/owner to inspect the vehicle and detect the tracking device. This person could then inform DANA BOWMAN, other TARGET SUBJECTS or their associates of the discovery, which would severely frustrate the goals of the

USA-003399

investigation.

66.     For those reasons, the use of tracking devices, either alone or in combination with other conventional investigative techniques is not practicable, and reasonably appears likely to fail if tried to achieve the full goals and objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line), and** CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

## POLE CAMERAS AND/OR CCTV CAMERAS

67.     Your Affiants have made use of the Baltimore Police Departments CCTV cameras in the past and have found that this technique does not prove adequately useful due to the fact that those involved in criminal activities are aware of the presence of these cameras and move their criminal activities to areas out of the view of the cameras.   Your Affiants have had the opportunity to monitor and observe the CCTV cameras in the east Baltimore areas that DANA BOWMAN and other TARGET SUBJECTS frequent.   In the area of Regester and Federal streets, there are no available CCTV cameras available for law enforcement use. In the area of the Milton and Hoffman streets there is approximately one (1) CCTV camera available for law enforcement to utilize.   In the area of 800 Abbott Court, there is approximately one (1) CCTV camera available for law enforcement use. The locations of the CCTV cameras are as follows:

1.      1100 N. Milton Avenue

USA-003400

2. 800 Abbott Court

68. The cameras are positioned in an area where its use as an investigative tool would be severely limited. These troubled areas include the alleyways off of Milton Avenue and the 2400 and 2500 block of Hoffman Street, which are out of view of the CCTV camera, making it virtually impossible for the camera to cover all possible areas. The CCTV camera located in the 800 block of Abbott Court does not allow law enforcement to view the rear exits of apartments and has a partially obstructed view by a large tree.

69. For those reasons, the use of CCTV cameras, either alone or in combination with other conventional investigative techniques, is not practicable or reasonably appears unlikely to succeed if tried, to achieve the full goals and objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164*1015*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164*1012*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

## GRAND JURY AND WITNESS INTERVIEWS

70. Conducting this investigation through a Grand Jury and/or witness interviews does not appear to be a promising method of investigation. The only witnesses known to your Affiants who could provide additional evidence of the activities and the identities of the conspiracy members have themselves been identified as members of the conspiracy. All of these individuals would themselves face prosecution

EXHIBIT 1                                    USA-003401

and, therefore, it is probable that they would invoke their Fifth Amendment privilege against self-incrimination. The only way to counter that invocation would be a grant of immunity. However, it is not desirable at this time to grant immunity to any of the identified conspirators, and thereby compel their testimony. Granting immunity to suspected co-conspirators would thwart the public policy of holding accountable those involved in criminal activities. On that basis it is your Affiants' opinion that issuing grand jury subpoenas directed to those suspected of involvement in this CDS conspiracy would not lead to the discovery of critical information at this stage. Instead, grand jury subpoenas would serve to alert conspiring members to the ongoing investigation, and thereby frustrate the purposes of this investigation.

71. For similar reasons, conducting interviews at this point in the investigation would not be successful in obtaining evidence of the criminal activities under investigation. Only the individuals who participate in the criminal conversations or transactions are knowledgeable of their contents, making these individuals subjects of this investigation. It has been your Affiants' experience, and the experience of other agents and law enforcement officers involved in this investigation, that interviews with individuals who are involved in the sale and distribution of CDS are not productive. These individuals do not wish to disclose their own criminal activity and do not wish to implicate others, due to fear for their own safety, and/or a loyalty to other subjects of this investigation.

72. For those reasons, the use of grand jury and witness interviews, either alone or in combination with other conventional investigative techniques, is not practicable or reasonably appears unlikely to succeed if tried to achieve the full

EXHIBIT 1

USA-003402

objectives of this investigation. It is only through the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164\*1015\*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164\*1012\*3591/IMSI# 316010159422589 (C-Line)** that all of the goals of this investigation can be achieved.

### TELEPHONE TOLL RECORDS

73. Analysis of telephone toll and pen register data has been used to further this investigation and has provided significant but limited information. That information has further corroborated your Affiants' opinion that CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164\*1015\*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164\*1012\*3591/IMSI# 316010159422589 (C-Line)** are being used to facilitate CDS transactions. Telephone records and/or pen register data cannot reveal the identities of the actual parties to the phone calls, the roles those parties play in this CDS conspiracy, or the actual contents of those communications. The records of calls received from and made to CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164\*1015\*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164\*1012\*3591/IMSI# 316010159422589 (C-Line)** leave your Affiants to speculate on the actual identities of the parties to the telephone calls and to the nature of those calls. Accordingly, the use of telephone toll records, either alone or in combination with other investigatory methods discussed herein, reasonably appears unlikely to succeed in achieving all of the goals

EXHIBIT 1

USA-003403

and objectives of the investigation without the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),** and CELLPHONE **443-224-4565/DC# 164\*1015\*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164\*1012\*3591/IMSI# 316010159422589 (C-Line)**.

## CRIMINAL HISTORIES

74.    Anything learned from past investigations, arrests or convictions of these individuals only serves to reinforce what has been learned during the course of this investigation and does not take the place of electronic surveillance in attempting to pinpoint when the transfers of CDS occur at each level in the hierarchy, nor does it identify all of the correlative functions associated with the conduct of the CDS business.

75.    Criminal histories are only indications of past behavior.  They do not provide any insight into the current method of operation of the members of this illegal enterprise or the sources of supply.  Criminal histories are helpful in identifying individuals and showing potential connections between certain persons. It does not, however, reveal the exact nature of their criminal involvement in this CDS conspiracy. Furthermore, criminal histories and pending criminal cases do not reveal the organizational structure of the Bowman Organization.

76.    Accordingly, it is your Affiants' opinion that analyzing the criminal histories of the TARGET SUBJECTS would not, alone or in combination with other information generated over the course of this investigation, achieve all of the goals of this investigation without the interception of CDS-related wire and/or electronic communications over CELLPHONE **410-949-4832/ IMSI# 310410187148454 (A-Line),**

USA-003404

and CELLPHONE **443-224-4565/DC# 164\*1015\*1724/IMSI# 316010166550249 (B-Line)** and CELLPHONE **443-992-8130 UFMI# 164\*1012\*3591/IMSI# 316010159422589 (C-Line)**.

## MONITORING AND MINIMIZATION

77.     All interceptions will be minimized in accordance with Section 10-408(e) (3) of the Courts and Judicial Proceedings Article of the Maryland Code. Interceptions will be suspended when it is determined through voice identification or otherwise that none of the named interceptees or their confederates, when identified, are participants in the conversation unless it is determined during a portion of the conversation already overheard that the conversation is criminal in nature. Even if the interceptees or one of their confederates, when identified, is a participant in a conversation, monitoring will be suspended if the conversation is not criminal in nature or otherwise related to the offenses under investigation. Every effort will be made to avoid interception of any conversation which may be protected by constitutional, statutory, or common law privilege.

## AUTHORIZATION REQUESTED

78.     Based on the foregoing, it is your Affiants' opinion that the interception of wire and electronic communications occurring over CELLPHONE **410-949-4832/ IMSI# 310410352505492(A-Line)** and wire communications over **443-992-8130/DC # 164\*1012\*3591/IMSI #316010159422589 (C-Line)** are essential to uncover the full scope of the illegal activity described herein and to achieve all of the goals of this investigation as set forth in paragraph twenty-seven (27). In as much as the illegal operation described herein is a continuing conspiracy involving numerous persons as

EXHIBIT 1

USA-003405

yet unidentified and unknown, it is requested that it be ordered, as more fully stated in the accompanying application, that authorization to intercept wire and electronic communications not terminate when the sought wire and electronic communications are first obtained, but continue until interception fully reveals the objectives set forth above, or for a period of thirty (30) days, whichever is earlier. The 30-day period shall be measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Court's Order or ten days from the date of this Court's Order.

79.     It is further requested that government personnel or other individuals who are operating under a contract with the government and acting under the supervision of investigative or law enforcement officers be authorized to conduct the interceptions, to assist in conducting this electronic surveillance, and to receive disclosure of intercepted communications.

80.     Pursuant to the provisions of section 10-408(d)(2) of the Courts and Judicial Proceedings Article of the Maryland Code, it is requested that it be ordered that AT&T Wireless, the ultimate service provider for CELLPHONE **410-949-4832/ IMSI# 310410352505492(A-Line)** and Sprint/Nextel, the ultimate service provider for CELLPHONE **443-992-8130/DC # 164*1012*3591/IMSI #316010159422589 (C-Line)** and any other service providers, furnish the technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with such services as those providers accord the persons whose communications are to be intercepted (including all dial digits, including all incoming and outgoing called, pen register information, and audio interception capability whether the cellular telephone is

USA-003406

in roaming mode or otherwise). The assistance of these providers is required to accomplish the objectives of the requested interceptions. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Baltimore Police Department and/or DEA.

81.    It is requested that this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others.

William Spencer
Detective
Baltimore Police Department

Kenneth Ramberg
Detective
Baltimore Police Department

Evans Celestin
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 6th day of October, 2010

John Addison Howard
Circuit Court for Baltimore City

EXHIBIT 1

USA-003407

STATE'S
EXHIBIT
15

Laboratory Section / Drug Analysis Report
01 LMS /442

**Baltimore Police Department, Laboratory Section**
**601 E. Fayette Street, Baltimore, Maryland 21202**

USA-003408

| Submitted By | Dist/Div | Seq. Number | Date | Time | Complaint Number |
|---|---|---|---|---|---|
| William R. Spencer | Organized Crime | H501 | 09/23/2010 | 00:01 | 101I10527 |
| | | | Location of Recovery or Seizure 601 E Fayette Street | | Property Number 10049377 |

| ITEM # | | | Analyst's Inventory | | | | ITEM # | LABORATORY REPORT |
|---|---|---|---|---|---|---|---|---|
| | Seizure / Recovery / [X] Purchase / Search Warrant | | Officer's Count | Count | Gross Weight (Grams) | Used In Analysis | | RESULTS / SCHEDULE |
| 1 | Plastic Bag | | 1 | | | | 1 | Not Analyzed |
| 2 | Gelcaps With Tan Powder Substance | | 22 | 22 | 5.33 | trace | 2 | Heroin / I and Pentobarbital / II Net Weight approximately 3.57g |

Defendant: Pending Investigation                 Adult: X   Juv.: ___

I hereby certify that the above listed Controlled Dangerous Substance(s) was properly tested using analytical and quality control procedures that are approved by the State Department of Health and Mental Hygiene.

Analysts having an identification number beginning with 'A', 'CA' or 'C' certain their names are certified by the Baltimore Police Department as qualified under standards approved by the State Department of Health and Mental Hygiene.

A. Rumber
C212

Date/Time
09/28/2010 05:30 pm

EXHIBIT 1

| | |
|---|---|
| Property #: | 10049377 |
| CC #: | 101l10527 |
| Gun #: | |
| Item #: | [x] All Items |

Description of Item:

---

The releasing person certifies that the evidence described above was retained in his/her custody and control until delivered to the recipient (" Received ") at the date and time stated; and that the evidence was delivered to the recipient in essentially the same condition as when it came into the releasing person's custody, except for any material or portion thereof which was consumed in analysis, and any associated markings made by the analyst.

Received: *ECU (Officer William R. Spencer)*      Date/Time  *09/23/2010 08:35 pm*

Received: *Gloria Wilson*      Date/Time  *09/24/2010 05:50 am*

Received: *CDS Vault (Gloria Wilson)*      Date/Time  *09/24/2010 10:27 am*

Received: *Anthony Rumber*      Date/Time  *09/25/2010 09:49 am*

Received: *CDS Vault (Anthony Rumber)*      Date/Time  *09/25/2010 12:25 pm*

Received:      Date/Time

Received:      Date/Time

Received:      Date/Time

Received:      Date/Time

Received:      Date/Time

Received:      Date/Time

Revised 08/18/2006

EXHIBIT 1