| EX PARTE IN THE MATTER | * | IN THE |
| OF THE APPLICATION OF | * | CIRCUIT COURT |
| THE STATE OF MARYLAND | * | FOR |
| FOR ORDERS AUTHORIZING | * | BALTIMORE CITY |
| CONTINUED INTERCEPTION | * | IN THE |
| OF WIRE COMMUNICATIONS | * | STATE OF MARYLAND |
| OVER TELEPHONE NUMBER | * | |

443-452-3541
UFMI# 164*1014*9291
IMSI# 316010166478723
(D-Line)

443-621-4429
IMSI# 000004102061681
(E-Line)

443-415-6646
MSID# 000004102008043
(H-Line)            and

EX PARTE IN THE MATTER

OF THE APPLICATION OF

THE STATE OF MARYLAND

FOR ORDERS AUTHORIZING

CONTINUED INTERCEPTION

OF WIRE AND ELECTRONIC

COMMUNICATIONS

OVER TELEPHONE NUMBER

443-804-2328
MSID# 000004438012818
(J-Line)

1

EXHIBIT 2b

USA-003889

## AFFIDAVIT

William Spencer, Affiant, a Detective with the Baltimore Police Department (hereinafter "BPD"), Kenneth Ramberg, co-Affiant, a Detective with the BPD, and Evans Celestin, co-Affiant, a Special Agent with the Drug Enforcement Administration, being duly sworn, depose and state:

## INTRODUCTION

1.     Affiant, Detective William Spencer, has been a duly sworn member of the Baltimore Police Department since December 1, 2003, and is an "investigative or law enforcement officer" within the meaning of section 10-401(6) of the Courts and Judicial Proceedings Article of the Maryland Code (herein after "Courts Article"), that is, a sworn law enforcement officer of the State or a political subdivision of the State, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 10 of the Courts Article.

2.     Affiant, Detective William Spencer, is currently assigned to BPD's Violent Crime Impact Section. Your Affiant has been previously assigned to Patrol, Northern District Drug Enforcement Section and the Organized Crime Division. Your Affiant's current assignment involves the investigation of violent offenders, drug organizations and undercover operations where your Affiant has face-to-face meetings with Controlled and Dangerous Substance (hereinafter "CDS") dealers looking to sell and purchase varying types of CDS.

3.     In addition to entry level training, (CDS training given by the U.S. Department of Justice, Drug Enforcement Administration (DEA,) your Affiant was assigned to the following positions within the Baltimore Police Department: Northern

2

EXHIBIT 2b

USA-003890

District Patrol Division, Northern District Drug unit, Organized Crime Division Narcotics Section, and as a Task Force Officer with the ATF Violent Crime Impact Team (VCIT) working in a plainclothes capacity.

4.    Your Affiant has received over 300 hours of specialized training through several schools hosted by the Baltimore Police Department, John E. Reid and Associates, HIDTA and St. Petersburg College to include CDS enforcement; technical aspects of CDS enforcement, recognition, and identification, firearm enforcement; CDS packaging, surveillance, hidden compartments in houses and vehicles, gang trends and identification. Through these classes and seminars, your Affiant has obtained invaluable experience in the detection, identification, usage, and investigation of CDS and CDS organizations.

5.    Your Affiant has also received a bachelor's of science degree from the University of Baltimore for Forensic Studies with a concentration in Criminal Investigation. Completed coursework to obtain this degree included classes entitled; Specialty Warrants and Wiretaps, Fourth Amendment Applications and Interpretations, Conspiracy Investigations and Innovative Investigative Techniques. Through these classes, your Affiant has obtained valuable knowledge and experience related to complex criminal investigations.

6.    Your Affiant has participated in over 800 arrests that have resulted in the seizure of substantial amounts of heroin, cocaine, marijuana and other illegal substances. Your Affiant has authored over 100 search and seizure warrants that have led to seizures of large amounts of CDS, firearms, and U.S. Currency. Your Affiant has been a co-Affiant on one case that involved the intercept of secure communications

EXHIBIT 2b

USA-003891

(wiretaps).

7. Your Affiant is familiar with the various methods used by individuals who buy and sell CDS. Your Affiant is familiar with the jargon, terminology, prices, packaging and street slang used by individuals who distribute and purchase CDS. Your Affiant has observed and/or participated in actual sales and/or undercover purchases of CDS. As a result of these observations and buys, your Affiant has arrested persons involved and seized suspected CDS. Your Affiant has been accepted on numerous occasions as an expert witness in the field of CDS packaging, identification, and methods of street level CDS distribution, including street terminology and jargon, CDS traffickers, the structure of CDS Trafficking organizations, the methods of payment, and the manner in which CDS is transported. Your Affiant has been so accepted in said areas of expertise in the United States District Court for the District of Maryland, the Circuit Court for Baltimore City, the District Court of Maryland for Baltimore City and the Juvenile Division of the Circuit Court for Baltimore City.

8. Co-Affiant, Detective Kenneth Ramberg, has been a duly sworn member of the Baltimore Police Department since October 6, 1994, and is an "investigative or law enforcement officer" within the meaning of section 10-401(6) of the Courts and Judicial Proceedings Article of the Maryland Code (herein after "Courts Article"), that is, a sworn law enforcement officer of the State or a political subdivision of the State, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 10 of the Courts Article.

9. Co-Affiant, Detective Kenneth Ramberg, is currently assigned to Baltimore Police Department's Violent Crime Impact Section. Since your co-Affiant began his

EXHIBIT 2b

USA-003892

career as a Baltimore City police officer in 1994, he has been assigned to the following units: Central District Patrol Division, Central District FLEX Unit, Central District Drug unit, Organized Crime Division Narcotics Section, and Task Force Officer with the ATF HIDTA Project Disarm Unit. Currently your Co-Affiant is assigned to the Violent Crime Impact Section (VCIS) working in a plainclothes capacity.

10.    Your co-Affiant has received over 230 hours of specialized training through several schools hosted by the Baltimore Police Department, The Florida National Guard, HIDTA and St. Petersburg College to include CDS enforcement; technical aspects of CDS enforcement, recognition, and identification, firearm enforcement; CDS packaging, surveillance, hidden compartments in houses and vehicles, gang trends and identification.    Through these classes and seminars, Detective Ramberg has obtained invaluable experience in the detection, identification, usage, and investigation of CDS and CDS organizations.

11.    Your co-Affiant has participated in over 1000 arrests that have resulted in the seizure of substantial amounts of heroin, cocaine, marijuana and other illegal substances. Your co-Affiant has worked on several cases that involved the intercept of secure communications (wiretaps). Your co-Affiant has authored 15 wire tap (title III) investigations which resulted in the seizure of large amounts of CDS and firearms. Your co-Affiant has authored over 100 search and seizure warrants that have led to seizures of large amounts of CDS, firearms, and U.S. Currency.

12.    Your co-Affiant is familiar with the language, terminology and street slang used by persons who purchase and distribute CDS. Your co-Affiant is also familiar with the prices as well as the packaging and paraphernalia used to distribute and

EXHIBIT 2b

USA-003893

manufacture CDS. Your co-Affiant has conducted numerous surveillances of suspected CDS transactions on the streets of Baltimore City. During these observations, thousands of CDS transactions have been observed resulting in the arrest of CDS violators. Your co-Affiant has also interviewed street-level, mid-level, and CDS distributors along with CDS users, which has provided insight into drug trafficking patterns.

13.    Your co-Affiant has been accepted on numerous occasions as an expert witness in the field of CDS packaging, identification, and methods of street level CDS distribution, including street terminology and jargon, CDS traffickers, the structure of CDS Trafficking organizations, the methods of payment, and the manner in which CDS is transported. Your co-Affiant has been so accepted in said areas of expertise in the United States District Court for the District of Maryland, the Circuit Court for Baltimore City, the District Court of Maryland for Baltimore City and the Juvenile Division of the Circuit Court for Baltimore City.

14. Your co-Affiant, Evans Celestin, has been employed as a Special Agent with the Drug Enforcement Administration (hereinafter referred to as "DEA") since September 2007. Your co-Affiant is currently assigned to the DEA of the Baltimore District Office Heroin Task Force.

15. Your co-Affiant previously served as a federal police officer with the Uniformed Division of the United States Secret Service for over six (6) years. During that time, your co-Affiant was primarily assigned to the White House branch, the Emergency Response Team, and the Special Operations Division.

EXHIBIT 2b

USA-003894

16.  Your co-Affiant received twenty-six (26) weeks of training at the Federal Law Enforcement Training Center and United States Secret Service Basic School in Beltsville, Maryland.  Additionally, your co-Affiant received eight (8) weeks of training at the Emergency Response Basic School and twelve (12) weeks of training at the Tactical Canine School.  Your co-Affiant received nineteen (19) weeks of formalized training at the DEA Training Academy in Quantico, Virginia.  Your co-Affiant received instruction on identifying CDS, packaging, pricing, importation methods, source cities, and trafficking methods of CDS violators.  Additionally, your co-Affiant has received training in informant handling, debriefing of CDS violators, and training in the area of surveillance and counter surveillance.

17.  Since becoming a Special Agent, your co-Affiant has participated in approximately 100 controlled purchases of heroin, MDMA, cocaine and crack cocaine using confidential informants. Your co-Affiant has participated in undercover operations. Your co-Affiant has participated in the execution of numerous search and seizure warrants pertaining to CDS. As a result, your co-Affiant was involved in the seizure of heroin, marijuana, crack cocaine, cocaine, and packaging materials.  After the execution of these warrants, your co-Affiant participated in debriefing of individuals suspected of involvement in drug trafficking.   During these debriefings, your co-Affiant became familiar with brand names and jargon used amongst CDS dealers.  In addition, your co-Affiant has testified numerous times before the Grand Jury for the United States of America.

18.  Your Affiants have learned from their training and experience that cell phones are an indispensable tool of the drug trafficking trade. CDS traffickers utilize cell

EXHIBIT 2b

USA-003895

phones to conduct all manner of CDS trafficking related activities, including but not limited to, contacting sources of supply to acquire new quantities of CDS, making and receiving calls from individuals that they supply with CDS, coordinating the distribution of CDS to organizational "shops" and arranging for the collection and laundering of CDS proceeds. Your Affiants have learned from their training and experience that CDS traffickers also utilize cell phones to communicate with sources of supply, shop workers and CDS purchasers through text messaging. Your Affiants have learned from their training and experience that the stored electronic communications in cell phones utilized by CDS traffickers contains the incoming and outgoing phone numbers of sources of supply, shop workers and CDS purchasers as well as text messages sent and received by the CDS trafficker's cell phone.

19.   Your Affiants submit this affidavit in support of an application for an order pursuant to section 10-408 of the Courts and Judicial Proceedings Article of the Maryland Code, authorizing the continued interception and recording of wire communications occurring over:

the cellular telephone assigned number **443-452-3541** (CELLPHONE **443-452-3541**) bearing **UFMI# 164*1014*9291/IMSI# 316010166478723 (D-Line)**, subscribed/billed to Boost Boost, P.O. Box 54988, Irvine, CA 92619, service provided by Sprint/Nextel; believed to be utilized by **Dana Bowman (AKA "New York Mike")**   and



EXHIBIT 2b

USA-003896

concerning offenses enumerated in section 10-406 of the Courts and Judicial Proceedings Article of the Maryland Code, that is, offenses involving the distribution, possession with intent to distribute, conspiracy to distribute and conspiracy to possess with intent to distribute controlled dangerous substances in violation of Title 5 of the Criminal Law Article of the Maryland Code and the common law of Maryland.

20.     Your Affiants respectfully submit that there is probable cause to believe that these offenses have been committed, are being committed, and will continue to be committed by persons who are the subjects of this investigation, including, among others:

**DANA BOWMAN (AKA "New York Mike" or "Hood")**
**DONALD WRIGHT (AKA "AZ" or "A")**
**SHAWN JOHNSON (AKA "S" or "Fatboy")**
**JEFF GIBBS (AKA "Jeff")**
**KEVIN JACKSON (AKA "KD")**
**WILLIAM HITE (AKA "Tony")**
**MICHAEL JOHNSON (AKA "Phil")**
**DAVID PARKER (AKA "Chief Busy Bee")**
**ARMOND DOWDELL (AKA "O")**
**TREON BROCKINGTON**
**STEVEN JACKSON**
**ALBERT WELLONS**
**EVETTE WELLONS**
**DONOVAN STERLING**
**SHAWN SCOTT (AKA "Cheese")**

EXHIBIT 2b

USA-003897

**ROGER BLACKBURN**
**MELVIN LAROND THOMPSON (AKA "Tical")**
**CORBIT TOLIVER (AKA "Pumpkin")**
**KOFI EGYIR**
**AUGUST CARMONA**
**TETORIA MCNEELY**
**TARAD PAYNE**
**ALPHONSO ROSS**
**DERRICK COULTON**
**and others as of yet unidentified (collectively, the "TARGET SUBJECTS").**

21.     The requested Orders are sought for a period of time until the requested interceptions fully reveal the identity of and manner in which the **TARGET SUBJECTS** engage in the above described offenses, or for a period of thirty (30) days, whichever occurs first, pursuant to section 10-408(e)(1) of the Courts Article. Pursuant to section 10-408(e)(1) of the Courts Article, it is requested that the 30-day period be measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Court's Order or ten (10) days from the date of this Court's Order.

22.     This investigation is currently being conducted by Baltimore Police Department (BPD) and Drug Enforcement Administration (DEA). Your Affiants have personally participated in this investigation and make this affidavit based on their personal participation in this investigation, reports made to your Affiants by other law enforcement agents, telephone records, a review of consensually-recorded conversations, a review of evidence seized and documents obtained during this investigation, and debriefings of confidential informants. Except where otherwise noted, the information set forth in this affidavit has been provided to your Affiants by other law enforcement agents who have assisted in the investigation. Unless otherwise noted,

EXHIBIT 2b

USA-003898

wherever your Affiants assert that a statement was made, the statement was made by another law enforcement officer (any of whom may have had either direct or hearsay knowledge of that statement) to whom your Affiants or other law enforcement officers have spoken or whose reports your Affiants have read and reviewed. Such statements are reported in substance and in part, unless otherwise indicated. Likewise, information resulting from surveillance sets forth either your Affiants' personal observations or information provided directly or indirectly through other law enforcement officers who conducted such surveillance.

23. As more fully described the previous affidavits, which have been *incorporated by reference*, in developing the evidence needed to successfully prosecute the above described **TARGET SUBJECTS** beyond a reasonable doubt, normal investigative procedures have been tried and failed, reasonably appear to be unlikely to succeed if tried or are too dangerous to attempt.

24. This affidavit is being submitted for the limited purpose of securing an order authorizing the continued interception of wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291/ IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and for securing an order authorizing the continued interception of wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)**. Your Affiants have not included details of every aspect of this investigation to date. Facts not set forth herein are not being relied on in reaching the conclusion that orders should be issued. Nor do your Affiants request that this Court rely on any facts not set forth herein in reviewing this application for an order

EXHIBIT 2b

USA-003899

authorizing the continued interception of wire and electronic communications.

## TARGET OFFENSES

25.     Based upon your Affiants' knowledge of the facts and circumstances of the present investigation, it is alleged that there is probable cause to believe that the **TARGET SUBJECTS** and others as yet unknown, have committed, are committing, and will continue to commit offenses involving distribution, possession with intent to distribute, conspiracy to distribute and conspiracy to possess with intent to distribute controlled dangerous substances in violation of Title 5 of the Criminal Law Article of the Maryland Code and the common law of Maryland, hereinafter referred to as "**TARGET OFFENSES.**"

## THE TARGETED CELLULAR TELEPHONE

26.     There is probable cause to believe that some of the **TARGET SUBJECTS** of this investigation, and others as yet unidentified, are using and will continue to use, during the period of interception applied for herein, CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and **443-804-2328 / MSID# 000004438012818 (J-Line)** to facilitate, accomplish, and commit the above-described offenses.

27.     There is probable cause to believe that these communications will reveal: (i) the nature, extent and methods of operation of the CDS trafficking activities of the **TARGET SUBJECTS** and others as yet unknown or unidentified; (ii) the identities of the **TARGET SUBJECTS**, their accomplices, aiders and abettors, co-conspirators and participants in their illegal activities, including the sources of supply of the controlled

EXHIBIT 2b

USA-003900

dangerous substances, as well as the distributors and purchasers of such controlled dangerous substances; (iii) the quantities and types of controlled dangerous substances involved in this conspiracy; (iv) the degree of participation and roles of all co-conspirators in this conspiracy; (v) the addresses and telephone numbers of all participants, so that the location of any criminal activity related to or resulting from this conspiracy to distribute controlled dangerous substances can be determined; (vi) all details about the manner of shipment or movement of controlled dangerous substances; (vii) methods of eluding law enforcement detection; (viii) the nature and scope of the drug activity; (ix) the locations of contraband and of items used in furtherance of those activities, including the location of all "stash" houses at which these controlled dangerous substances are stored; (x) the location and source of resources used to finance this illegal activity, and the location, movement and disposition of proceeds from this illicit drug activity; (xi) the times, dates, and locations of meetings at which persons involved in this conspiracy pick up CDS, exchange money, and meet to discuss the progress of the drug trafficking operation; (xii) the existence and locations of records of the drug trafficking operation; (xiii) the identification of communication devices or telephone instruments used by the **TARGET SUBJECTS** and others yet unknown, to further their illegal activities; and (xiv) other evidence necessary for the successful prosecution of the above-described participants and others as yet unknown. The acquisition of evidence relating to subparagraphs (i) – (xiv), sufficient to support guilt beyond a reasonable doubt, constitute the goals of this investigation. In addition, interception of these wire and electronic communications are expected to constitute admissible evidence of the commission of the offenses described above.

EXHIBIT 2b

USA-003901

28. Your Affiants have been informed by other law enforcement personnel who are familiar with the applicable telephone technology that a "portable cellular telephone" (or a "mobile telephone") can be used both within a vehicle and outside a vehicle through the use of a portable battery pack. The cellular telephone system divides the Baltimore metropolitan area into many small coverage areas, which are called "cells." As a vehicle in which a portable cellular telephone is located, or the cellular telephone itself, is moved from one cell to another, transmitters within each cell and a master switching network permit "wire communications" to be completed. The service provider for the CELLPHONE **443-621-4429 / IMSI# 000004102061681 (E-Line),** Virgin Mobile, the service provider for the CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-415-6646 / MSID# 000004102008043 (H-Line) and 443-804-2328 / MSID# 000004438012818 (J-Line),** Sprint/Nextel, are Communications Common Carriers (hereinafter CCC) as defined by 10-401(a) of the Courts Article, to wit a "Communications Common Carrier" means any person engaged as a common carrier for hire in the transmission of wire or electronic communications. It is requested that the authorization apply not only to the target telephone number listed above, but also to any other telephone numbers used by or assigned to the same IMSI/ESN as CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and **443-804-2328 / MSID# 000004438012818 (J-Line)** or to any other changed IMSI/ESN assigned to the same telephone number as CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI#**

EXHIBIT 2b

USA-003902

000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line) and
443-804-2328 / MSID# 000004438012818 (J-Line) during the same 30-day period.

29. In connection with the CCC which provides service for CELLPHONES
443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-
4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043
(H-Line) and 443-804-2328 / MSID# 000004438012818 (J-Line) all communications
over those cellular phones will automatically be routed to Baltimore, Maryland, where
interception will occur regardless of where the telephone calls are placed to or from
CELLPHONES 443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-
Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID#
000004102008043 (H-Line) and 443-804-2328 / MSID# 000004438012818 (J-Line)
during the requested wire surveillance, all monitoring will be performed in Baltimore,
Maryland, by investigative or law enforcement officers as defined by Section 10-401 (6)
of the Courts Article of the Maryland Code, including but not limited to Special Agents of
DEA, police officers of the Baltimore Police Department, and government employees or
individuals operating under a contract with the Government, who will be acting under
the supervision of investigative or law enforcement officers authorized to conduct the
interception.

30. Authorization is requested pursuant to section 10-408(c)(3) of the Courts
Article for an order authorizing the interception of wire and electronic communications
with regard to CELLPHONES 443-452-3541 / UFMI# 164*1014*9291 / IMSI#
316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-
415-6646 / MSID# 000004102008043 (H-Line) and 443-804-2328 / MSID#

EXHIBIT 2b

USA-003903

**000004438012818 (J-Line)** received or sent by a communication device anywhere within the State so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of this Honorable Court. In addition, it is requested that background conversations in the vicinity of CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and **443-804-2328 / MSID# 000004438012818 (J-Line)** while it is otherwise in use, also be intercepted. Your Affiants aver that the offenses being investigated may transpire in the jurisdiction of this Honorable Court.

## PRIOR APPLICATIONS

31.    Your Affiants have been informed that as recently as November 29, 2010, the wire and electronic surveillance files maintained by the Federal Bureau of Investigation, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and Immigration and Customs Enforcement (ICE) have been reviewed. This inquiry was conducted by contacting DEA and the Baltimore/Washington HIDTA Watch Center. Based on these reviews, there have been no prior applications for court authorized interceptions of wire, oral or electronic communications of the **TARGET SUBJECTS** or over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** or **443-804-2328 / MSID# 000004438012818 (J-Line)** with the exception of: The Honorable John Addison Howard, Associate Judge of the Circuit Court for Baltimore City, signed the following

EXHIBIT 2b

USA-003904

orders authorizing the installation and use of a Pen Register/Trap and Trace Device for cellular telephone: **410-949-4832 (A-Line)** on August 19, 2010, for **443-224-4565 (B-Line)** on September 24, 2010, for **443-992-8130 (C-Line)** on August 19, 2010, for **443-452-3541 (D-Line)** on October 12, 2010, for **443-621-4429 (E-Line)** on October 12, 2010, for **443-378-9641 (F-Line)** on October 21, 2010, and for **443-804-2328 (J-Line)** on October 26, 2010. On September 30, 2010 this Honorable Court signed orders authorizing the interception of wire communications over CELLPHONE **410-949-4832 / IMSI# 310410187148454 (A-Line)** and **443-224-4565 (B-Line)**. Subsequent to the signing, AT&T Wireless notified your Affiants that the IMSI number for **A-Line** had been changed on August 29, 2010 to 310410352505492 from 310410187148454. On October 6, 2010, this Honorable Court signed orders authorizing the interception of wire and electronic communications over CELLPHONE **410-949-4832 / IMSI 310410352505492 (A-Line)** and the interception of wire communications over CELLPHONE **443-992-8130 UFMI# 164*1012*3591 / IMSI# 316010159422589 (C-Line)**. On October 13, 2010, this Honorable Court signed an order authorizing the interception of wire and electronic communications over CELLPHONE **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line)**, which was extended on November 10, 2010. On October 21, 2010, this Honorable Court signed orders authorizing the interception of wire and electronic communications over CELLPHONE **443-621-4429 / IMSI# 000004102061681 (E-Line)**. On November 5, 2010, this Honorable Court signed orders authorizing the interception of wire communications over CELLPHONES **443-378-9641 / IMSI 316010166494946 / UFMI 164*1013*16400 (F-Line)**; **443-806-8765 / IMSI 316010160689064 / UFMI 165*502*7852 (G-Line)**; 443-

USA-003905

415-6646 / IMSI 000004102008043 (H-Line) and the interception of wire and electronic communications over CELLPHONE 443-415-6646 / IMSI 000004102008043 (J-Line). On November 16, 2010, this Honorable Court signed orders authorizing the continued interception of wire communications over CELLPHONE 443-621-4429 / IMSI# 000004102061681 (E-Line) and signed orders authorizing the interception of wire communications over CELLPHONE 443-452-2580 / IMSI 316010166479082 / UFMI 164*1006*9143 (I-Line).

32.    Your Affiants hereby *incorporate by reference* the Affidavit filed in support of the Application for an Order authorizing the interception of wire communications over CELLPHONE 410-949-4832 / IMSI# 310410187148454 (A-Line) and CELLPHONE 443-224-4565 / UFMI 164*1015*1724 / IMSI# 316010166550249 (B-Line) and the Affidavit filed in support of the Application for an Amended Order authorizing the interception of wire and electronic communications over CELLPHONE 410-949-4832 / IMSI 310410352505492 (A-Line), and the Affidavit filed in support of the Application for an Order authorizing the interception of wire communications over CELLPHONE 443-992-8130 / UFMI# 164*1012*3591 / IMSI# 316010159422589 (C-Line), and the Affidavit filed in support of the Application for an Order authorizing the interception of wire and electronic communications over CELLPHONE 443-452-3541 / UFMI# 164*1014*9291 / IMSI#316010166478723 (D-Line), and the Affidavit filed in support of the Application for an Order authorizing the interception of wire and electronic communications over CELLPHONE 443-621-4429 / IMSI# 000004102061681 (E-Line), and the Affidavit filed in support of the Application for an Order authorizing the interception of wire communications over CELLPHONES 443-378-9641 / IMSI#

EXHIBIT 2b

USA-003906

316010166494946 / **UFMI#** 164*1013*16400 (F-Line); **443-806-8765** / **IMSI#** 316010160689064 / **UFMI#** 165*502*7852 (G-Line); **443-415-6646** / **IMSI#** 000004102008043 (H-Line) and **443-452-2580** / IMSI 316010166479082 / UFMI 164*1006*9143 (I-Line), and the Affidavit filed in support of the Application for an Order authorizing the interception of wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438048218 (J-Line)**.

33. Additionally, your Affiants hereby *incorporate by reference* all court reports previously submitted to this Honorable Court pursuant to electronic surveillance orders for CELLPHONES **443-452-3541** / **UFMI#** 164*1014*9291 / **IMSI#** 316010166478723 (D-Line), **443-621-4429** / **IMSI#** 000004102061681 (E-Line), **443-415-6646** / **MSID#** 000004102008043 (H-Line) and **443-804-2328** / **MSID#** 000004438012818 (J-Line).

### PROBABLE CAUSE IN SUPPORT OF THE BELIEF THAT THE TARGET SUBJECTS, AND OTHERS AS YET UNIDENTIFIED, ARE USING CELLPHONE 443-452-3541 / UFMI# 164*1014*9291/ IMSI# 316010166478723 (D-Line) <ins>IN FURTHERANCE OF THE TARGET OFFENSES</ins>

34. On November 21, 2010 at 11:43 a.m., call **D-2753** was intercepted as an outgoing call to 443-762-0221 (believed to be utilized by Steven Jackson). The subscriber for this phone is Steven Jackson. The following is an excerpt from the call:

Jackson:     Hello.

Bowman:     Yeah.

Jackson:     Yeah.

Bowman:     Where you at?

Jackson:     In the house.

Bowman:    Hey, my homeboy going to pull up in a pick-up truck yo, for one.

Jackson:    All right.

35.    Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is calling Jackson and ordering him to conduct a CDS transaction for him. Your affiants have learned through the course of this investigation that Bowman utilizes several individuals to conducts CDS transactions for him when he is unable to do so. Your affiants know that it is common for drug dealers to do this in order to conduct as many CDS transactions as possible, and sell their CDS as quickly as possible.

36.    On November 22, 2010 at 10:37 a.m., call **D-2808** was intercepted as an outgoing call to 443-762-0221 (believed to be utilized by Steven Jackson). The subscriber for this phone is Steven Jackson. The following is an excerpt from the call:

Jackson:    Hello.

Bowman:    Yo.

Jackson:    Yo.

Bowman:    Hey, what I was going to say, umm where you at? In the house?

Jackson:    Yeah, yeah, yeah.

Bowman:    Hey, umm, it's a bag in there that got two bags in there right?

Jackson:    Yeah.

Bowman:    (inaudible) remember that one that has two bags.

Jackson:    Right.

Bowman:    Alright, take seven out of there, right?

Jackson:    Yeah.

EXHIBIT 2b

USA-003908

Bowman:      Give it to shorty in that grey truck for me. Make sure it's seven.

Jackson:     Alright.

Bowman:      Alright.

37.    Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is calling Jackson and ordering him to conduct a CDS transaction for him. Bowman is giving Jackson direct instructions on exactly how much CDS to give to the buyer. Bowman also shows that he has direct knowledge of exactly how much CDS is inside the stash location and exactly how it is packaged.

38.    On November 24, 2010 at 2:41 p.m., call **D-2949** was intercepted as an outgoing call to 443-957-5580 (believed to be utilized by an unknown male). The subscriber for this phone is unknown at this time. The following is an excerpt from the call:

Unknown Male:   Hello?

Bowman:          Yeah, I said I am about to drop my son off, right? But yo, it ain't, it ain't what I said it was, because shorty done tested it here, but it's something though if you want it.

Unknown Male:   What you say it was?

Bowman:          It's two of them, you heard me?

Unknown Male:   Yeah.

Bowman:          (inaudible)… you know, you want to wait a day or something I will holler at you though.

Unknown Male:   I can wait.

Bowman:          All right. I got you though. I know what I am going to do next time.

Unknown Male:   I'm getting ready to pick my daughter anyway, for real.

EXHIBIT 2b

USA-003909

| | |
|---|---|
| Bowman: | Me too. I said I get with you though. |
| Unknown Male: | All right. |

39. Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is calling the unknown male to inform him of the quality of the CDS that he currently has left. Bowman tells the unknown male that it's not what he originally said it was because he had someone test it. Your affiants know that it is common for drug dealers to test their products by having individuals sample it and let them know the quality of the high. Bowman tells the unknown male that he can have the "two" he has left or he can wait until tomorrow when he has a new supply of CDS. The unknown male chooses to wait until tomorrow.

40. On November 24, 2010 at 6:44 p.m., call **D-2975** was intercepted as an incoming call from 443-642-9518 (believed to be utilized by an unknown female). The subscriber for this phone is unknown at this time. The following is an excerpt from the call:

| | |
|---|---|
| Unknown Female: | …(to person in background) and all that shit. He ain't have to (inaudible). (to Dana Bowman) You know I'm on my way now. |
| Bowman: | For your usual? |
| Unknown Female: | Mmmm… nope. I ain't even got it on me. I'm getting a half of one. |
| Bowman: | All right. |
| Unknown Female: | All right. |

41. Your Affiants believe, based on their training, knowledge and experience in CDS investigations that the unknown female is contacting Bowman to arrange a CDS transaction. Bowman asks the unknown female if she wants her usual, which indicates

EXHIBIT 2b

USA-003910

that the two have a history of conducting CDS transactions. The unknown female informs Bowman that she doesn't have that much money on her and will only want half of what she usually gets.

42.    On November 24, 2010 at 6:57 p.m., call **D-2978** was intercepted as an outgoing call to 443-630-1690 (believed to be utilized by Albert Wellons). The subscriber for this phone is Evette Wellons. The following is an excerpt from the call:

Wellons:    Yo.

Bowman:    Yeah, how long you going to be, yo?

Wellons:    I'm getting ready to head down that way now, man.

Bowman:    All right.  You want what you did yesterday?

Wellons:    Huh?

Bowman:    What you did yesterday?

Wellons:    Yeah.

Bowman:    All right.

Wellons:    All right.

Bowman:    All right.

43.    Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is asking Wellons how long he'll be before he comes to purchase CDS from him. Bowman asks Wellons if he wants what he did yesterday, indicating that the two have a history of regular CDS transactions. Your affiants know that it is common for drug dealers to rely heavily on repeat customers in order to ensure efficient sales of their CDS.

EXHIBIT 2b

USA-003911

44.     On November 27, 2010 at 8:59 a.m., call **D-3070** was intercepted as an outgoing call to 443-857-0242 (believed to be utilized by David Parker). The subscriber for this phone is Busy Bee. The following is an excerpt from the call:

Bowman:     Yo.

Parker:     Hello?

Bowman:     Chief, what's up?

Parker:     Huh?

Bowman:     Said what's up?

Parker:     Who that?

Bowman:     This Mike.

Parker:     Be in around twelve Mike.

Bowman:     All right. Hey yo?

Parker:     All right.

Bowman:     Yo.

Parker:     Hello?

Bowman:     Yo.

Parker:     What happened?

Bowman:     Hey, Kofi ain't have nothing?

Parker:     No, not really. He had a little something. I think he did it. I, I ain't sure.

Bowman:     'Cause I, I, I would have helped you. That's why I was trying to call him. I ain't have that nigga number. …(inaudible)….

Parker:     Right. Uh, he, right he, he might, though I'm not sure. I talked to him, I told him I be there, be there around like 11:30, and if it's there I still need the help 'cause I want to, you know, finish what I'm doing and…. I'll hit you when I get in.

EXHIBIT 2b

USA-003912

Bowman:      Yeah, hit me.  All right.

45.      Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is contacting Parker to see if he knows if Kofi, who your affiants know to be Kofi Egyir, currently has any CDS. Parker tells Bowman that he might but he may have already sold it. Parker tells Bowman that he needs help to sell his current CDS, meaning that he is willing to sell some of his supply to Bowman for him to re-sell. Your affiants know that it is common for drug dealers to utilize multiple sources of supply in order to maintain a steady flow of CDS to their regular customers.

46.      On November 27, 2010 at 3:25 p.m., call **D-3094** was intercepted as an outgoing call to 443-650-2079 (believed to be utilized by an unknown male and Steven Jackson).  The subscriber for this phone is unknown at this time.  The following is an excerpt from the call:

| | |
|---|---|
| Unknown Male: | (to person in background) Tell him hold up, yo.  (to Bowman) Yo. |
| Bowman: | Hey, Nut.  Is Steve-O around you? |
| Unknown Male: | Yeah. |
| Bowman: | Where he at? |
| Unknown Male: | (inaudible) |
| Jackson: | Hello? |
| Bowman: | Yeah, is you around the way yet? |
| Jackson: | Yeah. |
| Bowman: | Hey, yo.  My homeboy outside in the blue car yo.  He want one of them yo. |
| Jackson: | All right. |

EXHIBIT 2b

USA-003913

Bowman:        I'm about to come up there too yo.

Jackson:        All right.

47.    Your Affiants believe, based on their training, knowledge and experience in CDS investigations that Bowman is calling Jackson and ordering him to conduct a CDS transaction for him. Your affiants have learned through the course of this investigation that Bowman utilizes several individuals to conducts CDS transactions for him when he is unable to do so. Your affiants know that it is common for drug dealers to do this in order to conduct as many CDS transactions as possible, and sell their CDS as quickly as possible.

### PROBABLE CAUSE EXISTS THAT PARTICULAR COMMUNICATIONS CONCERNING THE TARGET OFFENSES WILL BE OBTAINED THROUGH INTERCEPTION OF WIRE AND/OR ELECTRONIC COMMUNICATIONS OVER THE TARGET CELLPHONE

48.    Your Affiants have learned from their training, knowledge and experience in CDS enforcement that CDS trafficking is not an isolated or discrete criminal offense; rather, it is characterized by an ongoing and recurring criminal nature. CDS trafficking is an illicit commercial enterprise. The facts and circumstances set forth in this affidavit establish **Dana Bowman (AKA "New York Mike")** and other **TARGET SUBJECTS** are actively engaged in an ongoing conspiracy to traffic in CDS in Baltimore City. Your Affiants have also learned from their training, knowledge and experience in CDS enforcement that cellular telephones are an indispensable tool of the CDS trafficking trade. Cellular telephones are utilized by CDS traffickers to facilitate all aspects of the CDS trafficking trade.

49.    The facts and circumstances set forth in this affidavit demonstrate that

EXHIBIT 2b

USA-003914

**Dana Bowman (AKA "New York Mike")**, has used, is using and will continue to utilize CELLPHONE **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line)** in furtherance of the **TARGET OFFENSES**. Your Affiants believe, based on the totality of the information developed in this investigation, that probable cause exists and that particular communications concerning the offenses under investigation will be obtained through the interception of wire communications over CELLPHONE **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line)**.



EXHIBIT 2b

USA-003915



## NECESSITY FOR INTERCEPTION OF COMMUNICATIONS
## <u>OVER THE TARGETED CELLPHONES</u>

## NORMAL INVESTIGATIVE PROCEDURES HAVE BEEN TRIED
## AND FAILED OR THEY REASONABLY APPEAR TO BE UNLIKELY
## <u>TO SUCCEED IF TRIED OR ARE TOO DANGEROUS TO ATTEMPT</u>

89.     As outlined above, the goals and objectives of this investigation are to develop evidence sufficient to identify, locate, arrest and convict beyond a reasonable doubt, the criminal confederates of the CDS trafficking organization in which **DANA BOWMAN** and the other **TARGET SUBJECTS** are involved.   In addition, it is the purpose of this investigation to identify the organization's suppliers and the means by which the organization obtains and receives CDS, and to determine where the organization stores CDS and how it processes and launders CDS proceeds.  It is only through the continued interception of wire communications over CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that the investigating agents expect to fully identify the targets that have been partially identified thus far and

EXHIBIT 2b                                            USA-003940

to fully realize the objectives of this investigation. As indicated below, several conventional investigative techniques have been so far tried, reasonably appear likely to fail if tried, or are likely to be too dangerous to employ to achieve all of the goals and objectives of this investigation.

## USE OF CONFIDENTIAL INFORMANTS

90.     These affidavits are based partially on informant information that was obtained pursuant to informant debriefings. Informant information has produced limited success in achieving the goals of this investigation. While several informants have been utilized by your Affiants in this investigation and much information and evidence has been uncovered, the resulting information has failed to reveal the sources of supply, methods of distribution, locations of all stash houses, the manner of concealment and laundering of CDS proceeds and the full scope of the CDS organization involving DANA BOWMAN and the other TARGET SUBJECTS.

91.     Confidential informants have attempted to infiltrate the BOWMAN organization to no avail. Your affiants have sent informants into the area in an attempt to make contact with the TARGET SUBJECTS. Though there have been successful contacts with other members, the informants are unable to get to Dana Bowman directly. Without direct contact with BOWMAN, informants will be unable to gather the intelligence needed to dismantle the organization. Furthermore, there are no informants at this time that have direct contact with either Donald WRIGHT (AKA "AZ"), or Shawn JOHNSON (AKA "S" and "Fatboy").

92.     All of the confidential informants have indicated that they would be reluctant to testify, based on serious concerns for their own safety.  The confidential

EXHIBIT 2b

USA-003941

informants are familiar with some, but not all, of the **TARGET SUBJECTS** and lack the ability to enter the level of criminal activity that would provide the nature of information to prosecute DANA BOWMAN and the other TARGET SUBJECTS and others as of yet unknown. All confidential informants are cooperating for financial gain and are not currently facing any pending criminal prosecution. The confidential informants would be subject to impeachment based upon their expectation of deriving personal benefit from said testimony.

93.     For the above reasons, the use of confidential informants, alone or in combination with other conventional investigative techniques, has been tried and failed to achieve all of the goals and objectives of the investigation. It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line)**, **443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

### UNDERCOVER OFFICERS

94.     The high level of violence associated with the BOWMAN organization makes undercover operations too dangerous to attempt. Also, this organization is highly suspicious of new faces making it virtually impossible to introduce anyone in an undercover capacity above the level of street level operations. A mere purchase of CDS by an undercover officer would not give more information as to the structure of DANA BOWMAN'S ORGANIZATION or the manner in which they import and distribute CDS.

EXHIBIT 2b

USA-003942

It would simply serve to verify the information that the confidential informants have already been able to impart on investigators. These limitations and actions could prove fatal to the investigation and could jeopardize the safety of the undercover officer. For those reasons, the use of an undercover officer, either alone or in combination with other conventional investigative techniques, is not here practicable or reasonably appears likely to fail if tried and is likely to be too dangerous to employ to achieve all of the goals and objectives of this investigation. It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

## ASSOCIATE COOPERATION

95.     At this stage of the investigation, interviews with the known suspects and their associates concerning the above described violations would most assuredly compromise the investigation and cause the destruction or removal of evidence.  In the past, members of the BOWMAN Organization who have been approached or arrested by law enforcement have been very uncooperative or even hostile.  Your Affiants believe members refuse to cooperate out of fear of retaliation from other members or due to the amount of loyalty within the organization.  Your Affiants also believe that if investigators attempted to interview any of the **TARGET SUBJECTS** or their associates they would alert other members of possible infiltration by law enforcement.  This would

EXHIBIT 2b

USA-003943

make it dangerous and virtually impossible to obtain evidence needed to further the goals of this investigation through this or any other investigative technique.

96.    For those reasons, obtaining the cooperation of additional associates, either alone or in combination with other conventional investigative techniques, is not practicable and reasonably appears likely to fail if tried and is likely to be too dangerous to employ to achieve the full objectives of this investigation.   It is only through the interception of CDS related wire communications over CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line)**, **443-415-6646 / MSID# 000004102008043 (H-Line)** and the interception of CDS related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

## SEARCH WARRANTS

97.    While search and seizure warrants have been helpful in the investigation and prosecution of the crimes being investigated, execution of additional search warrants at this stage of the investigation would frustrate as opposed to advance the attainment of the goals of this investigation. The search warrants that have been executed thus far have provided little evidence to help identify other members of the organization, where stash houses are located, the vehicles used in furtherance of CDS trafficking, the locations of weapons and where bank accounts and other assets of the organization may be located.

98.    Your Affiants have previously identified the locations of possible stash houses. These locations have been relocated, your Affiants believe, based on the

EXHIBIT 2b                               USA-003944

**TARGET SUBJECTS'** perceived awareness of recent law enforcement activities directed towards them. Additionally, your Affiants believe that the scope of conspiracy has not yet been fully defined and that execution of multiple search and seizure warrants at this time would alert the **TARGET SUBJECTS** and other unknown members of the conspiracy that they are currently under investigation. Within the past year, search warrants have been executed in various target locations of the investigation with little or no result in terms of CDS recovered or targets arrested. None of the search warrants executed have furthered the investigation in terms of gaining knowledge as to the conspiracy; they have at the most, taken out of play one of numerous stash houses used by the **TARGET SUBJECTS**. In addition, comments have been made by Dana BOWMAN regarding the fact that police "can't find anything" and are frustrated, showing that he is aware of the fact that police are targeting him. Any further search warrants will simply continue to frustrate the investigation rather than adding intelligence regarding the conspiracy. Your Affiants believe, based on their training, knowledge and experience in CDS trafficking investigations, that the execution of multiple search warrants at this stage of the investigation would, at most, result in a temporary disruption or suspension of criminal operations by the BOWMAN organization, or at least result in the alteration of the methods of operation of the organization, such as disposing of cell phones currently used in furtherance of conspiratorial activities. The "dropping" of the cell phones used by the **TARGET SUBJECTS** would result in a severe setback to the progress of this investigation. The overarching goal of this investigation is to dismantle, not disrupt, the BOWMAN CDS trafficking organization.

99.    For these reasons, additional search warrants, either alone or in

EXHIBIT 2b

USA-003945

combination with other conventional investigative techniques is not practicable, or reasonably appears to be unlikely to succeed if tried to achieve the full goals and objectives of this investigation. It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line)**, **443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

## **PHYSICAL SURVEILLANCE**

100. On November 23, 2010, investigators received information from the call intercepts aforementioned above that Donald "AZ" WRIGHT was going to meet with an unknown female to discuss a possible suspected CDS transaction in the parking lot of Nick's Iron Pit gym located at 4801 Erdman Avenue, Baltimore, MD. At approximately 6:00 p.m., S/A Evans Celestin, BPD Detective William Spencer and TFO Ryan Jones initiated mobile surveillance in the area in anticipation of the meeting.

101. At approximately 6:10 p.m., Detective Spencer observed Wright's vehicle, the 2008 blue Honda bearing Maryland registration 32713CC, parked next to a 2004 Grey Audi bearing a temporary Maryland registration G620-680-968. Detective Spencer then observed WRIGHT sitting in the driver's seat of the 2008 blue Honda and an unknown female sitting in the driver's seat of the 2004 Gray Audi.

102. At approximately 6:14 p.m., Detective Spencer observed both individuals depart the parking lot location. It was decided at that point to continue surveillance on the unknown female and attempt to determine if suspected CDS was received from

USA-003946

WRIGHT. The unknown female continued to drive the 2004 Gray Audi northbound on Edison Highway, Baltimore, MD followed by TFO Jones and S/A Celestin in an unmarked vehicle.

103.   At approximately, 6:35 p.m., TFO Jones and S/A Celestin conducted a vehicle stop in the 4000 block of Seidal Avenue, Baltimore, MD based on the unknown female's temporary registration being illegible. TFO Jones asked for the unknown female's license and registration, at which time she replied that she was not in possession of her drivers' license but did have her registration. TFO Jones ran the unknown female's information through the Baltimore Police database and she was identified as Pearl Yvonne Gregg of 4355 Seidal Avenue, Baltimore, MD with a date of birth of 02/24/1964.   TFO Jones asked GREGG were she was coming from and she replied that she had just left a gym located in the area of Erdman Avenue where she was meeting with her cousin.   During the interview, GREGG voluntarily consented to a search her person and the vehicle for any weapons or contraband.   TFO JONES searched the outer layers of GREGG's clothing and S/A Celestin searched the vehicle; the result was negative for both. GREGG was released and TFO Jones and SA Celestin departed the area. Surveillance alone, illustrated by these events, will not give your Affiants all of the information needed in order to dismantle the BOWMAN organization.

104.   Based on the interception of the following calls over **D-Line**, D-3324, 3307, 3303, 3297, 3296, 3290, 3289, 3274, 3273, 3266 and 3259, your Affiants believed that a package of suspected CDS was going to be delivered to Albert Wellons (AKA "Al") on Wednesday, December 1, 2010. As a result, physical surveillance was established and the following events occurred.

EXHIBIT 2b

USA-003947

105.    On December 1, 2010, Baltimore County Police Detective Phillips and Officer Johnson observed a red Chevy Impala driving Southbound on Belair Road. The officers attempted to conduct a traffic stop for an illegal license plate cover. Due to traffic and weather conditions, the Impala was not stopped until it crossed into the jurisdiction of Baltimore City. Once the vehicle was stopped, Detective Phillips requested the assistance of the Baltimore Police Department. Co-affiant Kenneth Ramberg responded to assist.

106.    Upon arrival, your co-affiant spoke to Detective Phillips and Officer Johnson. Your co-affiant approached the red Impala and spoke to the driver, who was identified as Albert Wellons. The front seat passenger was identified as Evette Wellons. Your co-affiant asked Mr. and Mrs. Wellons if there were any guns, drugs or weapons or anything else your co-affiant should know about. Both Mr. and Mrs. Wellons stated there was nothing in the vehicle, and that your co-affiant could check.

107.    At this time, Your co-affiant requested a certified canine to respond. Your co-affiant asked Mr. Wellons to step out of the vehicle. Mr. Wellons opened his door, exited the vehicle, and put his hands above his head. He then stated, "I don't have nothing and there is nothing in the car. You can check." Mr. Wellons told your co-affiant that they were in the process of moving. Your co-affiant then completed a search of Mr. Wellons. A total of $69.00 was located in Mr. Wellons' front pants pockets. Your co-affiant then asked Mrs. Wellons to step out of the vehicle. Mrs. Wellons opened her door and was asked if she had any drugs or weapons on her person that the officer should know about, and could the officer check. Mrs. Wellons stated that she didn't and that Your co-affiant could check. Your co-affiant conducted an outer garment check of

USA-003948

Mrs. Wellons producing negative results.

108. At this time, Your co-affiant observed a UPS box that appeared to be out of place in the middle of the front and back seat. Your co-affiant asked Mr. Wellons what was in the box. At that time, Mr. Wellons began to shake and asked, "What box?" Your co-affiant put the box on the front passenger seat and asked Mr. and Mrs. Wellons what was in the box. Both denied any knowledge of the box, and stated that it was not theirs. Your co-affiant then asked, "Where did it come from?" Mr. Wellons stated that a UPS man had dropped it off and he, Mr. Wellons, took it. Your co-affiant asked whose name was on the box. At this time, Mr. and Mrs. Wellons began to look at each other and were both visibly shaking.

109. Baltimore Police Officer Colbert, a certified canine handler, and his canine "Clint", arrived on the scene. "Clint" is trained and certified in the detection of the presence of odors of controlled dangerous substances. "Clint" made several positive indications of the presence of the odor of controlled dangerous substances on the exterior of the vehicle, around the front driver's door and the front passenger door. "Clint" then went into the vehicle and indicated positive hits of the presence of the odor of controlled dangerous substances on the driver's seat and center console. "Clint" did not signal an alert to the presence of CDS in the UPS box. Your co-affiant advised Mr. Wellons that the canine had positively hit on the front seat. At that time, Mr. Wellons stated he smoked marijuana.

110. Your co-affiant proceeded to open the box based upon both the positive indications of the presence of the odor of controlled dangerous substances from "Clint", as well as the Wellons' disclaimed ownership or knowledge of the contents of the box.

EXHIBIT 2b

USA-003949

Upon doing so, your co-affiant discovered three large egg-like heat-sealed bags that were very tightly wrapped in cellophane. Your co-affiant made a small incision and observed green plant-like material and detected the smell of raw marijuana. Your co-affiant has acquired a high degree of familiarity both with the appearance and smell of raw marijuana as a result of his training, knowledge and experience in CDS investigations. Your co-affiant believes, based on his training, knowledge and experience, that "Clint's" failure to alert on the box can be explained due to the nature of the packaging of the marijuana, which is designed to minimize the risk of canine detection. Both Mr. and Mrs. Wellon were placed under arrest. Seized from the Chevy Impala was one tally sheet. Recovered from the UPS box were three (3) wrapped bundles containing suspected marijuana. Two bundles each contained approximately 562 grams of suspected marijuana, a schedule I CDS, the third bundle contained approximately 550 grams of suspected marijuana.

111.    Though this is an interruption in the delivery and distribution of CDS within the BOWMAN organization, it does not allow for the dismantling of the organization, which is the objective of this investigation. Only the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line)**, **443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** will allow for the dismantling of the organization through the identification of all the TARGET SUBJECTS and their co-conspirators, stash houses and sources of supply.

EXHIBIT 2b

USA-003950

**TRACKING DEVICES**

112.     The past experiences of your investigators in dealing with this organization have shown that DANA BOWMAN and the other TARGET SUBJECTS and their associates are extremely aware of law enforcement's efforts to discover their illegal activity. As a result, your Affiants believe that the risk involved in placing a bumper beeper or a Global Positioning System (GPS) device on any vehicles connected to DANA BOWMAN and the other TARGET SUBJECTS or their associates would strongly outweigh any evidentiary value. Through the course of this investigation your Affiants have found that the **TARGET SUBJECTS** and their associates are known to utilize multiple vehicles in the course of their illegal activities. It is also known that DANA BOWMAN has access to multiple vehicles and has been known to change vehicles on a regular basis. Because these vehicles are registered to other individuals, it is possible for another driver/owner to inspect the vehicle and detect the tracking device. This person could then inform DANA BOWMAN, other TARGET SUBJECTS or their associates of the discovery, which would severely frustrate the goals of the investigation.

113.     For those reasons, the use of tracking devices, either alone or in combination with other conventional investigative techniques is not practicable, and reasonably appears likely to fail if tried to achieve the full goals and objectives of this investigation. It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-

EXHIBIT 2b

USA-003951

related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

## POLE CAMERAS AND/OR CCTV CAMERAS

114.　Pole camera installations were attempted at the following locations: the intersection of Milton and Hoffman, the intersection of Federal and Regester and the intersection of Oliver and Durham. The installation failed due to there being no suitable power sources in the area. There is a limited amount of information that the pole cameras can provide due to the fact that those involved in criminal activities know the locations of the cameras and move their criminal activities out of view. In addition, the cameras would record only part of the criminal events, confirming associations but not revealing the critical content of conversations.

115.　For those reasons, the use of CCTV cameras, either alone or in combination with other conventional investigative techniques, is not practicable or reasonably appears unlikely to succeed if tried, to achieve the full goals and objectives of this investigation.　It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

## GRAND JURY AND WITNESS INTERVIEWS

116.　Conducting this investigation through a Grand Jury and/or witness interviews does not appear to be a promising method of investigation.　The only

EXHIBIT 2b

USA-003952

witnesses known to your Affiants who could provide additional evidence of the activities and the identities of the conspiracy members have themselves been identified as members of the conspiracy. All of these individuals would themselves face prosecution and, therefore, it is probable that they would invoke their Fifth Amendment privilege against self-incrimination. The only way to counter that invocation would be a grant of immunity. The supervising attorney of this investigation will not extend immunity to any of the co-conspirators at this time due to the illicit and dangerous nature of their activities. Granting immunity to suspected co-conspirators would thwart the public policy of holding accountable those involved in criminal activities. On that basis it is your Affiants' opinion that issuing grand jury subpoenas directed to those suspected of involvement in this CDS conspiracy would not lead to the discovery of critical information at this stage. Instead, grand jury subpoenas would serve to alert conspiring members to the ongoing investigation, and thereby frustrate the purposes of this investigation.

117. For similar reasons, conducting interviews at this point in the investigation would not be successful in obtaining evidence of the criminal activities under investigation. Only the individuals who participate in the criminal conversations or transactions are knowledgeable of their contents, making these individuals subjects of this investigation. It has been your Affiants' experience, and the experience of other agents and law enforcement officers involved in this investigation, that interviews with individuals who are involved in the sale and distribution of CDS are not productive. These individuals do not wish to disclose their own criminal activity and do not wish to implicate others, due to fear for their own safety, and/or a loyalty to other subjects of this

EXHIBIT 2b

USA-003953

investigation.

118.    For those reasons, the use of grand jury and witness interviews, either alone or in combination with other conventional investigative techniques, is not practicable or reasonably appears unlikely to succeed if tried to achieve the full objectives of this investigation.    It is only through the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** that all of the goals of this investigation can be achieved.

### TELEPHONE TOLL RECORDS

119.    Analysis of telephone toll and pen register data has been used to further this investigation and has provided significant but limited information.    That information has further corroborated your Affiants' opinion that CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and **443-804-2328 / MSID# 000004438012818 (J-Line)** are being used to facilitate CDS transactions.    Telephone records and/or pen register data cannot reveal the identities of the actual parties to the phone calls, the roles those parties play in this CDS conspiracy, or the actual contents of those communications.    The records of calls received from and made to CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-**

EXHIBIT 2b

USA-003954

**415-6646 / MSID# 000004102008043 (H-Line)** and **443-804-2328 / MSID# 000004438012818 (J-Line)** leave your Affiants to speculate on the actual identities of the parties to the telephone calls and to the nature of those calls. Accordingly, the use of telephone toll records, either alone or in combination with other investigatory methods discussed herein, reasonably appears unlikely to succeed in achieving all of the goals and objectives of the investigation without the continued interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)**.

<u>**CRIMINAL HISTORIES**</u>

120.   Anything learned from past investigations, arrests or convictions of these individuals only serves to reinforce what has been learned during the course of this investigation and does not take the place of electronic surveillance in attempting to pinpoint when the transfers of CDS occur at each level in the hierarchy, nor does it identify all of the correlative functions associated with the conduct of the CDS business.

121.   Criminal histories are only indications of past behavior. They do not provide any insight into the current method of operation of the members of this illegal enterprise or the sources of supply. Criminal histories are helpful in identifying individuals and showing potential connections between certain persons. It does not, however, reveal the exact nature of their criminal involvement in this CDS conspiracy. Furthermore, criminal histories and pending criminal cases do not reveal the

EXHIBIT 2b

USA-003955

organizational structure of the Bowman Organization.

122.　Accordingly, it is your Affiants' opinion that analyzing the criminal histories of the TARGET SUBJECTS would not, alone or in combination with other information generated over the course of this investigation, achieve all of the goals of this investigation without the interception of CDS-related wire communications over CELLPHONES **443-452-3541 / UFMI# 164\*1014\*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line), 443-415-6646 / MSID# 000004102008043 (H-Line)** and CDS-related wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)**.

## MONITORING AND MINIMIZATION

123.　All interceptions will be minimized in accordance with Section 10-408(e) (3) of the Courts and Judicial Proceedings Article of the Maryland Code. Interceptions will be suspended when it is determined through voice identification or otherwise that none of the named interceptees or their confederates, when identified, are participants in the conversation unless it is determined during a portion of the conversation already overheard that the conversation is criminal in nature. Even if the interceptees or one of their confederates, when identified, is a participant in a conversation, monitoring will be suspended if the conversation is not criminal in nature or otherwise related to the offenses under investigation. Every effort will be made to avoid interception of any conversation which may be protected by constitutional, statutory, or common law privilege.

## AUTHORIZATION REQUESTED

124.　Based on the foregoing, it is your Affiants' opinion that the continued

EXHIBIT 2b

USA-003956

interception of wire communications occurring over and CELLPHONES **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), 443-621-4429 / IMSI# 000004102061681 (E-Line)**, **443-415-6646 / MSID# 000004102008043 (H-Line)** and the continued interception of wire and electronic communications over CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** are essential to uncover the full scope of the illegal activity described herein and to achieve all of the goals of this investigation as set forth in paragraph twenty-seven (27). In as much as the illegal operation described herein is a continuing conspiracy involving numerous persons as yet unidentified and unknown, it is requested that it be ordered, as more fully stated in the accompanying application, that authorization to intercept wire and electronic communications not terminate when the sought wire and electronic communications are first obtained, but continue until interception fully reveals the objectives set forth above, or for a period of thirty (30) days, whichever is earlier. The 30-day period shall be measured from the earlier of the date on which investigative or law enforcement officers begin to conduct interception under this Court's Order or ten days from the date of this Court's Order.

125. It is further requested that government personnel or other individuals who are operating under a contract with the government and acting under the supervision of investigative or law enforcement officers be authorized to conduct the interceptions, to assist in conducting this electronic surveillance, and to receive disclosure of intercepted communications.

126. Pursuant to the provisions of section 10-408(d)(2) of the Courts and Judicial Proceedings Article of the Maryland Code, it is requested that it be ordered that

EXHIBIT 2b

USA-003957

**Sprint/Nextel,** the ultimate service provider for CELLPHONE **443-452-3541 / UFMI# 164*1014*9291 / IMSI# 316010166478723 (D-Line), Virgin Mobile**, the ultimate service provider for CELLPHONE **443-621-4429 / IMSI# 000004102061681 (E-Line)**, **Sprint/Nextel,** the ultimate service provider for CELLPHONE **443-415-6646 / MSID# 000004102008043 (H-Line)** and **Sprint/Nextel,** the ultimate service provider for CELLPHONE **443-804-2328 / MSID# 000004438012818 (J-Line)** and any other service providers, furnish the technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with such services as those providers accord the persons whose communications are to be intercepted (including all dial digits, including all incoming and outgoing called, pen register information, and audio interception capability whether the cellular telephone is in roaming mode or otherwise). The assistance of these providers is required to accomplish the objectives of the requested interceptions. Reasonable expenses incurred pursuant to this activity will be processed for payment by the Baltimore Police Department and/or DEA.

127. It is requested that this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others.

William Spencer
Detective
Baltimore Police Department

Kenneth Ramberg
Detective
Baltimore Police Department

Evans Celestin
Special Agent
Drug Enforcement Administration

70

EXHIBIT 2b

USA-003958

Sworn to and subscribed before me this _2nd_ day of _December_, 2010

█████████████████████████

John Addison Howard
Circuit Court for Baltimore City

EXHIBIT 2b

USA-003959