IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MELVIN THOMPSON | * | |
| | * | |
| | * | |
| v. | * | CIVIL NO. CCB-13-2202 |
| | * | Related Crim. No. CCB-11-0114 |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its undersigned counsel, respectfully submits its memorandum of law in opposition to the motion to vacate filed by the petitioner, Melvin Thompson (ECF 1056), pursuant to 28 U.S.C. § 2255. For the reasons discussed below, the 2255 motion should be denied.

**FACTUAL BACKGROUND**

Melvin Thompson was charged by indictment and pled guilty to conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. In his plea agreement (copy attached as Exhibit 1 to this memorandum), the petitioner admitted that he was guilty of the crime charged. *Id.* at ¶ 1, Attachment A (10-12). The plea agreement provided a complete advisory to the petitioner of the rights he was giving up by pleading guilty, of the consequences of the guilty plea, and of the fact that he would be sentenced pursuant to the United States Sentencing Guidelines and the facts as set forth in the plea agreement. *Id.* at ¶¶ 2, 3, 5, 6. The plea agreement contained stipulations concerning the applicable guidelines, *id.* at ¶ 6, 8, and also contained a paragraph in which the parties anticipated the possibility of the petitioner being a career offender. *Id.* at ¶ 6(a). *See also*

¶ 7 (providing that there was no stipulation as to criminal history and that the petitioner's criminal history might be greater if he was found to be a career offender).

Nowhere in the plea agreement did the parties enter into any stipulation or understanding limiting the specific convictions that might result in career offender status.

The petitioner signed affirmations at the end of the plea agreement and at the end of the statement of facts in which he confirmed that he had read the plea agreement, understood the agreement, and assented to all of its terms. *Id.* at pages 9, 12.

The petitioner pled guilty during a Rule 11 hearing on February 22, 2012. A copy of the rearraignment transcript is attached as Exhibit 2 to this memorandum. During the guilty plea proceeding, the petitioner was placed under oath as required under Rule 11 of the Federal Rules of Criminal Procedure. *Id.* at 2-3. The Court then reviewed with the petitioner all of the matters required by Rule 11, including the nature of the offense to which the petitioner was pleading, the maximum penalties, the rights the petitioner was giving up by pleading guilty, the terms of the plea agreement, and the petitioner's right to appeal and his waiver thereof. *Id.* at 7-8, 20. The Court verified that the petitioner had reviewed the agreement with counsel, and had signed the agreement. *Id.* at 11-12.

The Court specifically discussed with the petitioner the guidelines stipulations, and the provisions concerning possible career offender status. *Id.* at 17.

The Court verified that no force or threats had been used against the petitioner to get him to plead guilty. *Id.* at 11. The Court verified that the petitioner was satisfied with the performance of his counsel. *Id.* at 12. The Court advised the petitioner that the Court was not a party to the agreement and was not bound by its terms, or by whatever sentencing recommendation the parties might make. *Id.* at 22.

The Court advised the petitioner specifically, "[s]o you understand, at this point, nobody can make you an absolutely binding promise of what the sentence is going to be." *Id.*

The Court advised the petitioner of the provisions of the plea agreement confirming that the entire agreement was that contained within the plea agreement and within the sealed supplement. *Id.*

The Court also verified with the petitioner that there was no other reward, or benefit, or promise, or anything he expected to get in exchange for the guilty plea aside from what was within the letter. *Id.* at 23.

Based on those representations, the Court determined that the petitioner had made a knowing and voluntary decision to plead guilty, and accepted the petitioner's guilty plea. *Id.* at 24.

The petitioner appeared for sentencing on January 15, 2013. A copy of the transcript of the sentencing is attached as Exhibit 3 to this memorandum. The Court determined that the petitioner was a career offender based on his two prior convictions for possession with the intent to distribute narcotics. Exhibit 3 at 6. This finding was consistent with the presentence report (PSR). PSR ¶¶ 52. The Court imposed a below-guidelines sentence of 120 months imprisonment. Exhibit 3 at 29.

On July 29, 2013, the petitioner filed the instant motion to vacate.

## CLAIMS IN THE MOTION TO VACATE

In his motion, the petitioner makes two closely related claims:

First, Thompson claims that his defense counsel provided ineffective assistance of counsel by failing to "protect" the petitioner against being made a career offender based on two prior narcotics convictions. ECF 1056 at 4. The petitioner claims that he accepted the plea

3

agreement "solely" on "the basis of whether he would qualify as a career offender," and that there was no "mention whatsoever about the previous drug offenses." *Id.* The exact parameters of the claim are not entirely clear, but the claim does rest on the assumption that the petitioner was not given adequate "notice" of the possibility of career offender status in his case and that his defense attorney should have done more to prevent career offender status. The claim fails because Thompson had substantial notice of the possibility of career offender status, and because nothing his attorney did could have prevented him from being made a career offender.

Second, the petitioner claims that the government breached its plea agreement with him by seeking career offender status on the basis of prior drug convictions instead of "solely" on the basis of an assault second degree conviction. ECF 1056 at 5. The petitioner's claim fails because the government never agreed to limit its career offender position just to the assault conviction, nor did the government ever agree not to seek career offender treatment based on the petitioner's drug convictions. On the contrary, the government specifically put the petitioner on notice that it would be seeking to make the petitioner a career offender at sentencing, without restriction as to the convictions that would be used.

## ARGUMENT

Section 2255 of Title 28 of the United States Code, the statute under which the petitioner seeks his relief, provides relief to a prisoner in federal custody only on specific grounds, including:

(1) that the sentence was imposed in violation of the Constitution or laws of the United States;

(2) that the court was without jurisdiction to impose such a sentence;

(3) that the sentence was in excess of the maximum authorized by law; or

(4) that the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).

To obtain relief under section 2255 on a theory of ineffective assistance of counsel, a petitioner has the burden of demonstrating (1) that he received ineffective assistance of counsel; and (2) that he was prejudiced by that ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir. 1998). To satisfy the first prong, a petitioner has the burden of proving that his attorney's conduct violated the Sixth Amendment by falling below the reasonable standard of conduct expected of attorneys. *See Strickland*, 466 U.S. at 688; *DeTemple*, 162 F.3d at 289. As such, a Petitioner must show that his counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 688. There is a strong presumption under the law that a defense attorney's conduct was in fact competent. *Id.* at 689; *see also Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985).

With respect to the second ground, a petitioner who advances an ineffective assistance of counsel claim following his entry of a guilty plea has an even higher burden to establish prejudice. *Id.* Specifically, the Fourth Circuit has held:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988); *see also Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985). Where, as here, a defendant affirms under oath that he is satisfied with counsel (see argument section I, *infra*), the defendant's statements are binding on him absent "clear and convincing evidence to the contrary." *Fields v. Attorney General of Maryland*, 956 F.2d 1290,

1299 (4th Cir. 1992) (citation omitted); *accord United States v. Lemaster*, 403 F.3d 216, 220-23 (4th Cir. 2005).

In this case, the petitioner make two related 2255 claims, both of which are based on the idea that he was given a promise that the government would only seek a career offender adjustment based on his assault second conviction, rather than his two drug convictions. Both of the claims are without merit.

**I.      THE PETITIONER'S CLAIM THAT HIS LAWYER PROVIDED HIM WITH INEFFECTIVE ASSISTANCE OF COUNSEL ON THE CAREER OFFENDER ISSUE IS WITHOUT MERIT.**

The petitioner's first claim rests on the notion that his attorney (and the government and the plea agreement) provided some kind of promise that he would not be found to be a career offender on the basis of any convictions apart from his assault second conviction. ECF 1056 at 4. Although the petitioner's ineffective assistance theory is not altogether clear, the government believes that Thompson is advancing three theories in his first claim that his lawyer failed to "protect" him: first, that his lawyer was ineffective for failing to give him "notice" about the possibility of a career offender enhancement; second, that the petitioner only pled guilty because he was given a specific promise that any career offender finding would be based only on his assault conviction; and third, that his lawyer was ineffective for failing to make a better challenge to "protect" the petitioner against the career offender designation. The government will address each theory in turn.

With respect to the first theory, the petitioner cannot demonstrate that he was not given "notice" of the possible career offender enhancement. Indeed, such a claim is totally unsupportable given the record in this case. The plea agreement that the petitioner signed *expressly* advised the petitioner about the possibility of a career offender finding, and about the

6

resulting guidelines. Exhibit 1 at ¶¶ 6(a), 8. As discussed above, the petitioner also confirmed in writing in the plea agreement itself that he had reviewed the entire agreement, understood it, and voluntarily agreed to it. *Id.* at page 9. The petitioner also confirmed under oath at the Rule 11 hearing that he had read the entire agreement, understood it, and agreed to it. Exhibit 2 at 11-12. Thus, the plea agreement provided the petitioner with clear, written notice about the possibility of career offender status.

Likewise, during the Rule 11 hearing, the Court specifically discussed the possibility of career offender status with the petitioner:

> THE COURT: You have an agreement with the government that the base offense level is at least a 24. That's based on a quantity of heroin of at least 80, but less than a hundred grams.
>
> If you are a career offender, which depends on certain aspects of your criminal history, then your offense level would be 32. That is something, if there is not an agreement on, that I will have to decide at sentencing after I get a presentence report.

Exhibit 2 at 17. At the conclusion of its review of the salient aspects of the plea agreement, the Court then addressed the petitioner again:

> THE COURT: Mr. Thompson, I didn't read that word for word, but as far as you are concerned, is that a correct summary of what you think your agreement with the government is?
>
> PETITIONER: Yes, ma'am.

Exhibit 2 at 23. Thus, the record shows that the petitioner did have notice of the possible career offender adjustment.

Second, the petitioner cannot demonstrate that he was given a special, separate promise that if he was found to be a career offender, it would be determined only upon his assault conviction, and not his drug convictions. No such promise is found in the plea agreement itself.

7

Exhibit 1. No such promise was made at the Rule 11 hearing. Exhibit 2. The petitioner has pointed to nothing in the record that indicates that such a promise ever existed. On the contrary, the plea agreement itself disproved that any separate promises were made in this case; paragraph 20 provides that the plea agreement supersedes any prior promises or conditions between the parties, and also provided that there were no other agreements or understandings between the petitioner and the government about the terms of his plea. Exhibit 1 at ¶ 20. As discussed above, the petitioner confirmed in writing and under oath at the Rule 11 hearing that he had read, understood and agreed to the entirety of the plea agreement. Exhibit 1 at page 9; Exhibit 2 at 11-12.

Furthermore, the petitioner swore under oath at the Rule 11 hearing that no other promises, rewards, or benefits, or anything at all, had been promised to him in exchange for his guilty plea, besides what was in the plea agreement. Exhibit 2 at 23. The petitioner's claim in his 2255 motion, that a separate promise was made to him about how the government would prove his career offender status, is inconsistent with his sworn statements during the Rule 11 colloquy. The Fourth Circuit has stated that a defendant's "solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of veracity." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Accordingly, the Fourth Circuit has affirmed denials of 2255 claims based on a defendant's attempt to recant sworn statements during a Rule 11 guilty plea hearing, and has recognized that a defendant challenging his own statements in a 2255 motion faces a "formidable barrier." *Id.* Indeed, the Fourth Circuit had stated that with rare exceptions, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted rule 11 colloquy are always 'palpably incredible'

and 'patently frivolous or false.'" *Id.* (quoting *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975)).

The same must be said about Thompson's 2255 allegations, which claim the existence of a promise that was never made and that he expressly disclaimed during his Rule 11 hearing. The basis for the petitioner's ineffective assistance of counsel claim is the notion that he was made a promise that he would not be found to be a career offender except on the basis of his assault second conviction. This claim fails. No such promise concerning the career offender issue is found in the petitioner's plea agreement, or in the Rule 11 transcript. On the contrary, the petitioner affirmed in writing in the plea agreement that he had reviewed the entire agreement, and that the plea agreement as *written* contained all of the agreed terms between the petitioner and the government. Hence, the petitioner agreed by signing the plea agreement that there were no additional, unwritten promises between him and the government.

Numerous courts have addressed 2255 claims in which a movant alleges that he had a secret promise, either from defense counsel or from the government, for a lower sentence, in contradiction of sworn statements to the contrary during Rule 11 guilty plea hearings. With great regularity, courts have rejected such claims. *See, e.g., Shah v. United States*, 878 F.2d 1156, 1160 (9th Cir. 1989) (affirming district court's denial of 2255 motion without evidentiary hearing, where defendant's claim of a "secret agreement" not to use his prior record at sentencing was contradicted by record including transcripts of plea and sentencing hearings and other materials); *Tyra v. United States*, 270 Fed. Appx. 410, 416 (7th Cir. 2008) (unpublished disposition) ("Tyra's sworn statements contradict his current claim that the AUSA promised during the January interview to withhold self-incriminating evidence from the sentencing court. He offers no explanation for why he now contradicts his signed and sworn declarations that no

promises other than the plea agreement existed."); *United States v. Dies*, 2013 WL 653627 at * 11 (N.D. Ind. 2013) (unpublished disposition[1]) ("Similarly, here, even if the Court assumes that that counsel indicated to the Defendant that he could receive a sentence below the agreed term of 156 months, the Defendant cannot establish that this advice prejudiced him given his acknowledgement in his Rule 11 colloquy that he understood he would be sentenced to 156 months of imprisonment."); *United States v. Williams*, 2011 WL 6118638 at * 4 (N.D. Fla. 2011) (unpublished disposition) ("Because the record refutes defendant's claims that counsel promised him a result beyond the plea agreement or that the plea was anything other than free and voluntary, the defendant cannot establish deficient performance."). *See also Brown v. United States*, 2011 WL 886214 at * 2 (D. Md. 2011) (unpublished disposition) (Chasanow, J.) (rejecting 2255 motion where defendant claimed he was promised five years imprisonment by his lawyer, where movant's "allegations are flatly refuted by the record," including Rule 11 hearing and plea agreement).

What Thompson is doing in this case is no different than what the Fourth Circuit rejected in the *Lemaster* case, and what the various courts rejected in the other cases cited above. In February 2012, Thompson *swore* that the plea agreement contained the only promises made to him, and that no other promises had been given him. Exhibit 1 at ¶ 20; Exhibit 2 at 23. Now, Thompson claims that there *was* an additional agreement: the idea that the government would not seek career offender status on anything other than an assault second conviction. Thompson is contradicting his sworn Rule 11 statements and the plea agreement. Such claims should be unavailing in a 2255 motion.

---

[1] Copies of the unpublished cases cited herein are included in the Appendix in alphabetical order.

In opposition to his sworn Rule 11 statements, the petitioner provides no countervailing evidence except for his own, self-serving claim that a misunderstanding about the career offender issue prejudiced him. The claim is inherently unreliable because it is contradicted by the petitioner's sworn Rule 11 statements, and by his signature on the plea agreement, in which he confirmed that *no promises* had been made to him except those expressly written in the plea agreement.

With respect to the petitioner's third claim, the petitioner has not demonstrated any ineffective assistance of counsel by virtue of his attorney's failure to defeat career offender status. Section 4B1.1(a) of the United States Sentencing Guidelines provides that a person is a career offender if the instant offense of conviction is a "controlled substance" offense or a "crime of violence," and the defendant has two or more prior felony convictions for such crimes. In this case, the petitioner qualifies. He was convicted here of conspiracy to distribute heroin, a qualifying "controlled substance offense." He had two prior convictions for controlled substance offenses, including possession with the intent to distribute heroin (PSR ¶ 41) and possession with the intent to distribute cocaine base and conspiracy (PSR ¶ 46). *See also* PSR ¶ 52. Therefore, the petitioner *was* a career offender. Thompson was determined to be a career offender not because of any ineffective assistance of counsel, but because of his criminal record.

In purporting that his defense lawyer should have done more to "protect" him from career offender status, Thompson advances little or no argument. He articulates no claims, no evidence and no case law that his defense lawyer should have advanced. Indeed, but for a conclusory allegation of ineffective assistance, Thompson makes no argument whatsoever as to how his lawyer might have defeated his career offender status. The vagueness of the petitioner's claims is, by itself, enough to reject them. In evaluating 2255 petitions, courts have been clear that

vague, conclusory allegations are not a sufficient basis to secure relief, or even an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), *abrogated on other grounds recognized in Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999); *United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (generalities and conclusory assertions not sufficient to entitle habeas petitioner to evidentiary hearing); *United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004) (noting "enormous" deference accorded to defense counsel, particularly in the context of trial strategy).

## II. THE PETITIONER'S SECOND CLAIM, WHICH IS PROCEDURALLY DEFAULED, FAILS ON ITS MERITS BECAUSE THERE WAS NO AGREEMENT BETWEEN HIM AND THE GOVERNMENT ABOUT THE CAREER OFFENDER ISSUE.

**A. The Petitioner's Second Claim Is Procedurally Defaulted.**

A defendant procedurally defaults on a claim if he could have raised it on direct appeal but failed to do so. *See United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). A defendant may bring a procedurally defaulted claim in a 2255 motion only if he "can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

The petitioner's claims about a government breach of his plea agreement could have been the subject of a direct appeal. The petitioner filed no such appeal and therefore has defaulted this claim. The defendant has pointed to no cause for his failure to assert this claim on appeal, and he has not claimed actual innocence (nor could he, given that he swore under oath that he was guilty of the crime in question, Exhibit 2 at 16-17).

To the extent that the petitioner were to avoid his default by claiming that he received ineffective assistance of counsel by virtue of counsel's failure to advance this claim previously, that argument would also fail. As discussed in the preceding section (addressing the petitioner's claim concerning alleged promises made to him) and in the next section, the petitioner's arguments about the alleged breach are completely without merit. Therefore, there was no deficient performance by virtue of counsel's failure to pursue such claims. Furthermore, there was no prejudice because any such challenge to the guilty plea would have failed had one been asserted before this Court, or on appeal. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).

**B. The Petitioner's Breach Theory Fails on Its Merits.**

Much like his first 2255 claim, the petitioner's second claim is based on an alleged promise not found in the plea agreement. As discussed in section I, *supra*, the petitioner's claim fails because no such promise was ever made to him.

The record makes clear that the only promises made to Thompson were those set forth in the plea agreement (Exhibit 1). The plea agreement contemplated the possibility of a career offender adjustment, Exhibit 1 at ¶ 6(a), but nothing in the plea agreement established any limitations on the specific prior convictions that would be used to establish that career offender status. The petitioner confirmed in the plea agreement that no other promises were made to him. Exhibit 1 at ¶ 20. The petitioner confirmed under oath at the Rule 11 hearing that no promises had been made to him except for those set forth in the plea agreement. Exhibit 2 at 23. The petitioner's written and sworn affirmations that he was not made any additional promises disprove his assertions that the government made an additional promise to rely only on the assault second conviction. *See Tyra*, 270 Fed. Appx. at 416; *Brown*, 2011 WL 886214 at * 2.

Because the petitioner had advanced no evidence in support of his claim of an additional, unrecorded agreement about career offender status, and because his sworn statements and the record disprove such a claim, the petitioner's second 2255 allegation fails on its merits.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Vacate.

Respectfully Submitted,

ROD J. ROSENSTEIN
United States Attorney


By: _____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4895
Fax: (410) 962-3124

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of November 2013, a copy of the foregoing was dispatched by certified mail to:

>Melvin Thompson, pro se
>No. 53171-037
>FCI Otisville
>P.O. Box 1000
>Otisville, New York 10963

>_____/s/_____
>Michael C. Hanlon
>Assistant United States Attorney